ANNA KINDERVATER, BY HER NEXT FRIEND, ANNA KINDERVATER, AND RUDOLPH KINDERVATER, PLAINTIFFS-RESPONDENTS, v. MOTORISTS CASUALTY INSURANCE COMPANY (ALSO KNOWN AS THE MOTOR CLUB INSURANCE COMPANY), AND NOW KNOWN AS THE ATLANTIC CASUALTY INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued February 2, 1938—Decided May 11, 1938.

For the appellant, *Harry Green.*

For the respondents, *Henry H. Eisenberg.*

The opinion of the court was delivered by

HEHER, J. The Anna Kindervaters, mother and daughter, severally recovered judgment against defendant's assured, William Simoni, for the pecuniary equivalent of personal injuries attributable to a highway collision, on July 11th, 1931, between the latter's automobile—driven by him and occupied by the Kindervaters as his "invitees"—and two like vehicles operated by David Doyle and Moe Brodsky; and Rudolph Kindervater, the husband and father, was likewise

awarded his consequential damages. The parties waived trial by jury, and submitted the cause on a stipulation of facts.

Some two weeks after the mishap, Simoni, at the instance of a member of the Brodsky family, made the following written acknowledgment of responsibility for the collision: "William Simoni do admit colliding, damaging and injuring the occupants in automobile operated by Moe Brodsky on the highway to the Victory bridge named Scott Avenue, namely an Oldsmobile coach and my car, a Chevrolet coupe. * * * I admit liability in the above mentioned accident." And the decisive question is whether he thereby breached—so as to forfeit the benefit of the stipulated indemnity—the provision of his liability policy commanding him to render to the defendant insurer "all co-operation within his power," and not to "voluntarily assume any liability, settle any claim or incur any expense, except at his own cost, or interfere in any negotiations for settlement or legal proceedings without the consent of the Company previously given in writing." We resolve the inquiry in the affirmative.

This covenant is in the nature of a promissory warranty—a condition upon which the liability of the insurer to render indemnity depends. The insurer's obligation is expressly conditioned upon "compliance with the provisions" set out in the policy. That is a condition precedent to recovery upon the policy. This particular provision is obviously an essential term of the contract; and its breach operates as an avoidance of the insurer's contractual liability. *Hudson Casualty Insurance Co.* v. *Garfinkel,* 111 *N. J. Eq.* 70; *Coleman* v. *New Amsterdam Casualty Co.,* 247 *N. Y.* 271; 160 *N. E. Rep.* 367; *American Automobile Insurance Co.* v. *Fidelity and Casualty Company of New York,* 159 *Md.* 631; 152 *Atl. Rep.* 523.

Concededly, the provisions of chapter 116 of the laws of 1929 (*Pamph. L., p.* 195), in effect when the policy was issued, are not applicable; and in such circumstances the rights of these judgment creditors under the policy coincide with those of the assured. Their rights are purely derivative. They stand in the shoes of the assured; and such defense as

the insurer is at liberty to interpose against the assured, arising out of a breach of this condition, is likewise available against them. *Hutt* v. *Travelers Insurance Co.,* 110 *N. J. L.* 57; *Hudson Casualty Insurance Co.* v. *Garfinkel, supra.*

Thus we are brought to a consideration of the question of whether the assured's admission of "liability" for the collision served to absolve the insurer from its contractual obligation to make indemnity for such liability to respond in damages as the law imposed upon the assured. This court answered that inquiry in the affirmative as regards the claim of George Brodsky, the owner of the vehicle driven by Moe Brodsky. *Brodsky* v. *Motorists Casualty Insurance Co.,* 112 *N. J. L.* 211; *affirmed,* 114 *Id.* 154. But the learned trial judge read the policy condition in question as providing "a forfeiture by the assured of all his rights against the insurer under the policy" only "as to that liability for which he has assumed responsibility." Distinguishing the two cases, he found that the assured "was undoubtedly remiss in the performance of his obligations under the policy with respect to the Brodsky claim," while he "was not remiss in his obligations to the insurer so far as these plaintiffs are concerned." In so ruling, he fell into error.

The parties to a contract of insurance are free to enter into such engagements as they choose, if not in contravention of statutory inhibitions or public policy. Where the language employed to express the common intention is clear and unambiguous, giving to the words their ordinary significance and taking into consideration the general design and purpose, there is no occasion for the application of the canons of construction. As in the case of other contracts, the judicial function is limited to the effectuation of the plainly expressed intention of the parties to the contract.

The design of the provision in question was not only to obviate the risk of a covinous or collusive combination between the assured and the injured third party, but also to restrain the assured from voluntary action materially prejudicial to the insurer's contractual rights, especially in the exercise of its exclusive function to defend claims made under the policy.

The assured is enjoined against the voluntary assumption of *"any* liability." This is a necessary corollary of the stipulations reserving to the insurer the exclusive direction and control of the defense of claims so made. The obligation thus imposed is as peremptory as the duty of co-operation laid upon him by the immediately preceding clause and of non-interference in "any negotiations for settlement or legal proceedings" prescribed by the next succeeding provision. They are kindred provisions contrived to achieve the same general objective. A violation of either relieves the insurer from policy liability, regardless of whether actual prejudice has ensued therefrom. *Coleman* v. *New Amsterdam Casualty Co., supra.*

An interpretation that would require a demonstration of substantial detriment to the insurer, as the result of the breach of such a condition, would seriously impair its practical efficacy. It suffices if the condition has been breached in a material or essential particular. In *Fidelity and C. Co.* v. *Marchand* (1924), *S. C. R.* 86; 13 *B. R. C.* 1135; (1924), 4 *D. L. R.* 157, there was a voluntary payment by the assured of a judgment recovered against him before the time for appeal had expired, and while the insurer was considering the advisability of appealing; and it was held to be a "settlement" of the claim upon which the judgment was based within the meaning of a condition similarly phrased. In applying what we conceive to be the correct principle, Duff, J., said: "Such conditions would be robbed of nearly all practical value if, in applying them, the question of the validity of the professed claim must be investigated. For the purpose of protecting the company against collusion in relation to fabricated or unfounded claims, it is necessary that the conditions should exclude the possibility of such conduct in connection with any claim of any character."

The insurer's liability was in clear and unmistakable language made contingent upon the fulfillment of the specified conditions. And the assured has no just cause for complaint if he be held to the substantial performance of duties thus freely undertaken. They are of the very essence of the contract. It is not of the judicial function to emasculate a

material provision solemnly and understandingly incorporated in the contract by the parties, and within their competency. The terms of the contract, as understood by a person of reasonable intelligence, measure the insurer's obligation; and there can be no recovery, in the absence of the elements of estoppel or waiver, where the assured has breached in matters of substance a reasonable protective provision made the determinative of liability. This regulation of the assured's conduct is essentially reasonable. Without these protective provisions, the insurer would be at the mercy of dishonest and culpably indifferent policy holders, for thereby it would run the risk of impoverishment to the detriment of honest claimants. Neither the public nor private interest is served by laxity in this regard.

It may be suggested that such provisions, so construed, lend themselves to collusion between the insurer and the assured for the frustration of the statutory policy of a direct action by the injured third party where the assured is insolvent or bankrupt, but this is not a sufficient reason to deprive the honest insurer of reasonable protection against the dishonest policy holder or one culpably disregardful of his contractual obligations.

That the claimant was not a party to the assured's assumption of liability, and did not take advantage of it in the assertion of the claim ultimately reduced to judgment, are wholly irrelevant matters. Such a distinction is plainly illusory; it has no substantial basis in the contract. As pointed out, the test is whether the assured could have recovery in a direct action against the insurer. The rights of the Kindervaters rise no higher than his. And the particular liability is not severable under the circumstances here presented. There was an unqualified and all-embracive assumption of liability flowing from the collision. The assured assumed full responsibility for the consequences of the "accident." The fact that he was at the moment dealing with a member of the Brodsky family did not serve to confine the results of the breach to the claims made by the Brodskys. Such an interpretation would do violence to the reasonable

intendment of the language employed to express the common intention and the purpose plainly designed to be served. The admission thus made was obviously introducible in evidence in the action instituted against the assured by the Kindervaters, although not made to them or with special reference to their claims. In so assaying his own conduct, and that of the other parties concerned, involving as it did also their legal relations, rights and duties, the assured ran counter to the plain letter and spirit of the contract. In thus formally and solemnly admitting "liability" for the "accident," he necessarily assumed liability for the resultant damages, and so relieved the insurer of its undertaking to render indemnity. This is quite different from a mere admission of conduct classable as negligent, not in itself constituting an assumption of liability. Moreover, as heretofore noted, an assumption of *any* liability is violative of this particular condition.

The Brodsky case, *supra,* is analogous. The same conditions obtained there. The plaintiff was just as much a stranger to the admission or assumption of liability as the Kindervaters. Nor was any use made of the writing, or its contents, in the trial of the action against the assured.

And it does not matter whether the phrase "except at his own costs" be held to qualify the whole clause or merely the immediately preceding provision relating to the settlement of a claim or the incurring of expense. A breach operates as an avoidance of the insurer's liability.

It suffices to add that, as pointed out by the trial judge, the holding of this court on the prior presentation of the cause is not to the contrary. 117 *N. J. L.* 131. The question there decided was the propriety of the nonsuit on the ground that "the sheriff's return to the writ of execution did not show insolvency or bankruptcy of Simoni;" and it was held that an unsatisfied final judgment sufficed to sustain a right of action under the policy by the injured third party. The insurer was not called upon for a defense, and the question now mooted was not raised on the record. The significance of the opinion on this point is that in such circumstances the

court could not determine the question. It is, of course, to be read in relation to the facts of that case and the question actually determined.

The judgment is accordingly reversed; and, the facts having been stipulated, the cause is remanded with direction to enter judgment for defendant.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PERSKIE, DEAR, WOLFSKEIL, JJ.   5.

*For reversal*—PARKER, CASE, BODINE, DONGES, HEHER, HETFIELD, WELLS, RAFFERTY, WALKER, JJ.   9.