NANCY NAVLYT *et al.*, Minors, by Mary J. Heidemann, their Mother and Next Friend, *et al.*, Plaintiffs-Appellees, *v.* STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellant.

First District (1st Division)    No. 77-667

Opinion filed July 5, 1978.

Victor J. Piekarski and Richard H. Hoffman, both of Querrey, Harrow, Gulanick & Kennedy, Ltd., of Chicago, for appellant.

James P. Chapman and Lawrence T. Stanner, both of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs Nancy Navlyt, Jo Ann Navlyt and Donald Navlyt, minors, by their mother and next friend, Mary Heidemann, sued defendant State Farm Fire & Casualty Company on a liability insurance policy allegedly insuring the employer of the deceased Joseph Navlyt. Joseph Navlyt was killed when a ditch, in which he was installing a sewer system for Paul

Kalinich, collapsed on him. In an action by plaintiffs against Kalinich for the wrongful death of Joseph Navlyt, defendant refused to participate, contending that no contract of insurance existed since Kalinich never paid a premium on the $100,000 policy. However, no request was ever made on Kalinich to pay the premium and further, he believed the premium was to be paid by the mortgage lender.

After a bench trial, a $125,000 judgment was entered against Kalinich. A co-insurer, Glens Falls Insurance Company paid $25,000 on the judgment and Kalinich personally paid $10,000. In consideration for a promise not to execute on the judgment, Kalinich assigned his rights under defendant's policy to plaintiffs.

Thereafter, plaintiffs, as assignees of Kalinich, instituted the subject action against defendant to recover on the policy insuring Kalinich. After a bench trial, the trial court entered a judgment in favor of plaintiffs. Defendant appeals.

On appeal, defendant argues: (1) that there was no contract of insurance since there was no "meeting of the minds" as to who would pay the premium; (2) that any contract of insurance that may have existed was terminated by Kalinich's failure to meet certain provisions of the policy; and (3) that defendant's liability under the policy is limited to the $10,000 Kalinich paid in partial satisfaction of the judgment.

We affirm.

On June 12, 1968, Joseph Navlyt was killed when a ditch in which he was working, suddenly collapsed on him. At the time, he was working on the installation of a sewer system for townhouses. Paul Kalinich was the developer of the townhouses and Navlyt's employer.

Kalinich had previously obtained financing for the development through Howard Savings and Loan Association (hereinafter referred to as Howard). As was the usual practice, Howard obtained insurance for the premises through Glens Falls Insurance Company (hereinafter referred to as Glens Falls), insuring Kalinich for $25,000. However, three months before Navlyt's death, Kalinich discovered that the premises did not have fire or liability coverage. He then decided to obtain insurance, unaware of the Glens Falls policy.

Kalinich realized that, as a general rule, Howard and other savings and loan institutions write their own insurance. However, Kalinich wanted to obtain insurance from a company of his choice. As a consequence, he telephoned Paul Buckholtz, an agent for defendant State Farm and requested that policies for both fire and liability coverage be sent to Howard, as an additional insured, as soon as possible. Kalinich further informed Buckholtz that the premiums would be paid by Howard. Buckholtz agreed and defendant later sent the policies to Buckholtz for delivery to Kalinich and Howard. However, Buckholtz never delivered

them to Kalinich nor requested that he pay the premium. Involved were policies containing $39,000 coverage for fire protection and $100,000 coverage for liability.

On June 12, 1968, almost immediately after learning that Navlyt had been killed, Kalinich phoned Buckholtz to advise him of the accident. Buckholtz replied that he could see no basis for liability and that Kalinich should not worry.

On or about July 2, 1968 (approximately 20 days after Navlyt's death), defendant mailed to Kalinich, notices of cancellation of the liability policy, effective July 14, 1968. The reason stated was the failure to pay the $13 premium.

Kalinich immediately phoned Buckholtz for an explanation. Buckholtz told Kalinich that Howard had insisted upon writing its own insurance and had rejected defendant's coverage. Buckholtz stated further that Kalinich should ignore the July 2, 1968, notice of cancellation since the policy was already cancelled. This conversation with Buckholtz was Kalinich's first knowledge that Howard had rejected defendant's coverage.

After learning that Howard had rejected defendant as an insurance carrier, Kalinich phoned Howard in order to advise them of defendant's cancellation. Kalinich spoke to a Mr. Podromas who advised him not to worry because he was covered by a $25,000 liability policy with Glens Falls. It is undisputed that this was the first time Kalinich became aware of the Glens Falls policy. Up to this time, Howard had been paying the premium on the Glens Falls policy.

Later that year, an action was commenced in Du Page County by Navlyt's wife and three minor children, plaintiffs here, against Kalinich for damages under the Illinois Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60). The complaint alleged that at the time of Navlyt's death, the ditch in which he was working failed to have proper supports.

Kalinich was represented in the action by Glens Falls. Glens Falls moved to dismiss the complaint on the ground that the ditch in which Navlyt was working was not covered by the Structural Work Act. The motion was granted and plaintiffs appealed. We reversed the circuit court. (*Navlyt v. Kalinich* (1970), 125 Ill. App. 2d 290, 260 N.E.2d 855.) The supreme court later affirmed the decision of the appellate court. *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219.

During the course of discovery on remand, plaintiffs' counsel learned of the possible existence of a $100,000 insurance policy with defendant, insuring the same risk as the Glens Falls policy. In July 1973, plaintiffs subpoenaed Paul Buckholtz as well as defendant's records. Kalinich served a demand on defendant to defend him at the trial, along with Glens Falls' counsel. Defendant failed to respond.

After a bench trial, the trial court entered judgment in favor of plaintiffs for $125,000. Thereafter, Glens Falls tendered a check for $25,000 to plaintiffs. In addition, Kalinich paid $10,000 to plaintiffs leaving a balance of $90,000 on the judgment. The $10,000 was paid as partial satisfaction of the judgment and in exchange for a covenant not to execute on the balance of the judgment. Further, Kalinich assigned his cause of action on defendant's liability policy to plaintiffs.

Thereafter, plaintiffs, as assignees of Kalinich, instituted the present action in the circuit court of Cook County against defendant in order to recover on the policy issued to Kalinich. After a bench trial, the trial court entered judgment in favor of plaintiffs for $106,200, plus costs. Defendant appeals.

Defendant first argues that the trial court erred in finding that there was a contract of insurance between Kalinich and defendant. Defendant argues that Kalinich's failure to pay the $13 premium is evidence that he never intended to pay the premium. Thus, there was no contract because there was no "meeting of the minds," as to the payment of the premium.

■ ■ We cannot agree. The record reveals that after defendant issued the insurance policy to Kalinich, defendant sent the policy to Buckholtz. It was then Buckholtz' duty to forward the policy to the insured and request payment of the premium. This was never done. Kalinich testified that he never received a copy of the policy and further, that he was never requested to pay the premium. He always assumed that the premium would be paid by Howard and Buckholtz was aware of this fact from the start. However, it was not until he received his notice of cancellation for failure to pay the $13 premium, that he became aware that the premium was due. Coincidentally this was 20 days after he informed defendant of Navlyt's death and his claim under the policy. The trial court was unpersuaded by defendant's argument that Kalinich was willing to risk losing a $100,000 insurance policy in order to save $13. We are of the same opinion and cannot fault the trial court's finding that there was a valid contract of insurance between Kalinich and defendant.

■ ■ Further, accepting defendant's conclusion that there was never a contract of insurance would be contrary to Illinois law. In Illinois, it is well settled that once an insurance carrier issues a notice of cancellation, it is estopped from claiming that the policy never existed. *Aetna Insurance Co. v. Maguire* (1869), 51 Ill. 342; *Kerr v. Pusateri* (1965), 64 Ill. App. 2d 172, 212 N.E.2d 263.

■ ■ Defendant next argues that even if there was a valid contract of insurance, defendant is relieved of any liability, due to Kalinich's breach of certain provisions of the policy. Under the terms of the policy, when a suit is filed against the insured, the insured is to forward the summons to

defendant. Defendant concludes that because Kalinich failed to forward the summons from plaintiffs' suit against him, defendant was relieved of any obligation to represent him. Defendant also concludes that Kalinich's failure to forward the summons also relieves it of any liability under the policy.

We disagree. Almost six months before the suit against Kalinich was tried, plaintiffs served a notice to take the deposition of Buckholtz and also served a subpoena on defendant for records relating to Navlyt's death. At that time, defendant established a claim file and assigned the Navlyt claim a claim number. Therefore, while defendant may not have received a copy of the summons, they were nonetheless aware of the suit against Kalinich.

■■ Further, it is well-settled in Illinois that an insurance carrier that mistakenly denies the existence of coverage to an insured, is subsequently barred from asserting a defense that the insured failed to comply with any conditions of that policy. (*Crest v. State Farm Mutual Automobile Insurance Co.* (1974), 20 Ill. App. 3d 382, 313 N.E.2d 679; *Thompson v. Glover* (1969), 115 Ill. App. 2d 253, 253 N.E.2d 132: *Dinn Oil Co. v. Hanover Insurance Co.* (1967), 87 Ill. App. 2d 206, 230 N.E.2d 702.) The rule is controlling in this case since defendant is attempting to relieve itself from liability by strictly construing a policy it mistakenly claimed never existed.

■■ Finally, defendant argues that its liability, if any, is limited to $10,000, the amount paid by Kalinich to plaintiffs in exchange for their covenant not to execute on the judgment against him. Under the policy, defendant was obligated to pay "all sums which the insured shall become legally obligated to pay as damages." Defendant argues that since Kalinich paid $10,000 to plaintiffs, this sum was all that he was "legally obligated" to pay according to the terms of the settlement agreement. Accordingly, defendant concludes that this sum is all that it should be required to pay plaintiffs as assignees of the policy.

Defendant's position is not supported by applicable law. In *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, we approved a pretrial settlement whereby one insurer paid its $20,000 policy and plaintiff agreed to pursue State Farm which had refused to pay or defend the insured, asserting policy defenses. We stated:

> "Ample authority exists holding that when an insurer refuses to defend the suit against its insured, the insured may settle with other parties in the case and protect himself or herself against further liability without waiving the insured's rights or the rights of the injured plaintiff to continue the proceedings against the insurer." 39 Ill. App. 3d 944, 948, 352 N.E.2d 60, 63.

We also noted that an insurer such as defendant can easily protect itself in such a situation by defending under a reservation of rights or seeking other appropriate declaratory judgment action:

"As pointed out in the *Sims* case (*Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 193 N.E.2d 123), and observed again in *Palmer v. Sunberg,* the insurer is not left without an opportunity to assert noncoverage since it may defend on the reservation of rights (if the insured will agree to such reservation) or the insurer may seek a declaration of its rights and duties in a separate declaratory judgment action before or pending trial of the original action instituted by plaintiff against the insured. State Farm did neither. It refused to participate in the defense and disposition of the case and did not take action to establish noncoverage by declaratory judgment. It thus had its opportunity to assert noncoverage." 39 Ill. App. 3d 944, 949, 352 N.E.2d 60, 64.

The instant case presents an even stronger case for plaintiffs than *Elas.* Here, by the terms of the "Partial Satisfaction of Judgment and Covenants Not to Sue," Kalinich expressly assigned his rights under the insurance policy to plaintiffs. This was not done in *Elas.* More importantly, in contrast to *Elas* where the covenants were executed prior to trial, the covenants in the present case were executed *after* a $125,000 judgment was entered against Kalinich. Thus, Kalinich's need to protect his personal estate is more compelling than the defendant insureds in *Elas.*

As to defendant's theory that liability is limited to the $10,000 Kalinich paid in partial satisfaction of the judgment, we cannot concur. The $10,000 payment arose out of a separate agreement between Kalinich and plaintiffs. It was in no way related to the legal obligation contemplated by his insurance policy with defendant and therefore, in no way limited defendant's liability.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

O'CONNOR and BUCKLEY, JJ., concur.