ROBERT BISHOP, Plaintiff-Appellee, *v.* LEE CROWTHER, Defendant-Appellee.—(MFA INSURANCE COMPANY, Garnishee Defendant-Appellant.)

First District (1st Division)    No. 80-2713

Opinion filed November 9, 1981.

John E. Guy, of Abramson & Fox, of Chicago, for appellant.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Nat P. Ozmon and Curt N. Rodin, of counsel), for appellee Robert Bishop.

Robson, Masters, Ryan, Brummund & Belom, of Joliet (Dario A. Garibaldi, of counsel), for appellee Lee Crowther.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Defendant MFA Insurance Company (MFA) appeals from a declaratory judgment finding that defendant Lee Crowther is entitled to full rights and benefits under the Homeowner's Insurance Policy issued to him by MFA and from the garnishment judgment entered in favor of plaintiff Robert Bishop against MFA in the amount of $175,000, plus interest and costs.

The facts underlying this appeal are: In 1973, MFA issued its Homeowner's Insurance Policy to Lee Crowther and his wife on their home in Joliet, Illinois. In the autumn of that year, Lee Crowther entered into a contract with Kofoid and Pilon to build a family-room addition to their single-family home. The roofing and gutter work on the addition was to be performed by Crowther, Inc., of which defendant Lee Crowther was a principal or shareholder and vice-president. Crowther,

Inc., assigned plaintiff Robert Bishop, a loaned employee, to apply the shingles. While engaged in this work, he fell from a ladder and was injured. He brought suit under the Illinois Structural Work Act against Lee Crowther individually and Kofoid and Pilon. MFA defended the suit against Lee Crowther under a reservation of rights based on the business pursuits and workmen's compensation benefits exclusions in the Homeowner's policy. Before trial, plaintiff and Lee Crowther entered into the following agreement which was disclosed to all parties and to the court:

"The undersigned, for the mutual consideration herein contained, agree as follows:

1. Robert Bishop hereby agrees that in the event of verdict and judgment against Lee Crowther individually or Lee Crowther and Kofoid and Tilon, in case No. 74 L 19065, that he, Robert Bishop, will not execute said judgment against any personal assets of Lee Crowther, but rather will execute said judgment as it pertains to Lee Crowther only against the applicable proceeds of Lee Crowther's policy of insurance through MFA Insurance Company.

2. Lee Crowther agrees that in the event of verdict and judgment against him and in favor of Robert Bishop in Case No. 74 L 19065 that he will fully cooperate with Robert Bishop and his attorneys only after verdict in endeavoring to collect said judgment from MFA Insurance Company whether by means of garnishment, declaratory judgment, or any other means of collection."

After a jury trial, Kofoid and Pilon were found not liable and Lee Crowther liable to plaintiff Robert Bishop in the amount of $175,000. Lee Crowther appealed and this court affirmed the judgment against him. (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 415 N.E.2d 599.) The supreme court denied leave to appeal. 85 Ill. 2d 555.

After the judgment in the trial court, plaintiff filed a garnishment proceeding against MFA upon the Homeowner's Insurance Policy and MFA filed a declaratory judgment proceeding for a declaration that it was not liable under the policy exclusions relating to business pursuits and workmen's compensation benefits. The court below found that the claimed exclusions did not apply and that the covenant not to execute did not relieve MFA from its obligation to pay the judgment against Lee Crowther. It entered a garnishment judgment for plaintiff and against MFA in the amount of the judgment recovered by plaintiff from Lee Crowther, plus interest and costs.

On appeal, MFA argues that the covenant not to execute bars plaintiff's recovery, as do the business pursuits and workmen's compensation benefits exclusions of the policy. We disagree.

The policy issued by MFA provides:

"COVERAGE E—PERSONAL LIABILITY. This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * * caused by an occurrence."

MFA argues that by the covenant not to execute, Crowther was no longer "obligated to pay" damages to Bishop and therefore MFA is relieved of its obligation to pay under its policy.

In plaintiff's injury suit, the attorneys representing the insured there under MFA's reservation of rights and who are the same attorneys who represent MFA in this appeal argued that because of the covenant not to execute plaintiff had failed to establish damages. This court affirmed the judgment in Bishop's favor and rejected that argument, saying (92 Ill. App. 3d 1, 8-9):

"Plaintiff and defendant entered into a covenant providing that plaintiff would not seek to execute any judgment against any personal assets of defendant, but reserved the right to execute against assets relating to his insurance. Crowther asserts that a legal consequence of this covenant is that no damages are enforceable against him individually. He further maintains that plaintiff failed to establish an element of his cause of action: proof of damages. We disagree. Defendant's argument fails to distinguish between such concepts as liability, damages, judgment and execution. Defendant's liability and the amount of damages were both established by the judgment. The execution determines which of defendant's assets will be used to satisfy the judgment. An agreement limiting execution to specific assets does not negate damages.

*Thornton v. Paul* (1977), 51 Ill. App. 3d 337, 366 N.E.2d 1048, *aff'd in part, rev'd in part on other grounds* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, involved a similar covenant. *Thornton* concerned a tavern owner striking a patron with a club. The insurer refused to defend the civil suit because its policy excluded intentional torts. Plaintiff and defendant entered into an agreement in which plaintiff agreed to limit the source of collection of any judgment to defendant's insurer. This agreement was not disclosed to either the court or the insurance company until after a default judgment was entered and garnishment proceedings instituted against the insurer. The insurer filed a section 72 petition to vacate the default based upon the undisclosed covenant. The appellate court denied the petition, stating (51 Ill. App. 3d 337, 341):

'An agreement per se between the claimant and the insured where the carrier is denying coverage, stipulating that the plaintiff will not execute against property of the insured other than the limits of the insurance policy in the

event of a recovery against defendants in the principal action, has been approved and is not contrary to public policy. *Krutsinger v. Illinois Casualty Co.* (1957), 10 Ill. 2d 518, 141 N.E.2d 16; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24; *Elas* [(1976), 39 Ill. App. 3d 944, 352 N.E.2d 60].'

The court also noted that the covenant merely exempted from execution certain of defendant's assets and was not relevant to the question of either liability or damages. Accordingly, we reject defendant's argument that damages were not established."

The supreme court denied leave to appeal. 85 Ill. 2d 555.

While it is true that in this court's opinion affirming the judgment in favor of Bishop the argument that Crowther was not "legally obligated to pay" was directed to the existence of damages and here it is directed to the coverage of the policy, the arguments are essentially the same.

■■ It seems apparent that if an agreement not to execute except as to insured's insurance does not violate public policy, to deny it efficacy would be an exercise in empty rhetoric. We hold that the agreement does not *per se* relieve MFA of liability under its policy.

Defendant relies heavily on *Childress v. State Farm Mutual Automobile Insurance Co.* (1968), 97 Ill. App. 2d 112, 239 N.E.2d 492, *appeal denied* (1968), 39 Ill. 2d 627, in support of its argument that the covenant here precluded plaintiff's recovery because Crowther was no longer "legally obligated to pay." From a reading of the opinion, it does not appear that the court there considered the public policy aspect. In addition, in *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 352 N.E.2d 60, *appeal denied* (1976), 63 Ill. 2d 556, the court stated (39 Ill. App. 3d 944, 948):

> "Ample authority exists holding that when an insurer refuses to defend the suit against its insured, the insured may settle with other parties in the case and protect himself or herself against further liability without waiving the insured's rights or the rights of the injured plaintiff to continue the proceedings against the insurer. *De Luxe Motor Stages v. Hartford Accident & Indemnity* (1st Dist. 1967), 88 Ill. App. 2d 188, 193, 232 N.E.2d 141; *Krutsinger v. Illinois Casualty Co.* (1956), 10 Ill. App. 2d 344, 135 N.E.2d 180, *aff'd*, 10 Ill. 2d 518, 527, 141 N.E.2d 16 (1957); 7A *Appleman*, §4690, at 492, and §4714, at 591-92.
>
> Defendant cites *Childress v. State Farm Mutual Automobile Insurance Co.* (4th Dist. 1968), 97 Ill. App. 2d 112. 239 N.E.2d 492, as authority to the contrary. The rationale of that case may seem obscure, but the court there seems to rely principally on the asserted fact that there was no contractual relationship between

the insured and the insurer. Be that as it may, there was clearly a contractual relationship in the case before us, and we do not believe that *Childress* is convincing authority in face of the general rule to which we have referred in this opinion."

Thus, not only did *Childress* not consider the public policy aspect, but, as pointed out in *Elas*, it failed to recognize the general rule that even a settlement does not waive the rights of either the insured or of the injured plaintiff to continue the proceedings against the insurer. Consequently, we decline to follow *Childress* if the effect of that decision is as defendant contends.

In *Navlyt v. State Farm Fire & Casualty Co.* (1978), 62 Ill. App. 3d 387, 378 N.E.2d 1228, *appeal denied* (1978), 71 Ill. 2d 618, plaintiffs recovered a $125,000 wrongful death judgment against State Farm's insured Kalinich. A co-insurer paid $25,000 and the insured personally paid $10,000. In consideration for a promise not to execute on the judgment, Kalinich assigned to plaintiff his rights under State Farm's policy. In its opinion, the court said (62 Ill. App. 3d 387, 392-93):

> "Finally, defendant argues that its liability, if any, is limited to $10,000, the amount paid by Kalinich to plaintiffs in exchange for their covenant not to execute on the judgment against him. Under the policy, defendant was obligated to pay 'all sums which the insured shall become legally obligated to pay as damages.' Defendant argues that since Kalinich paid $10,000 to plaintiffs, this sum was all that he was 'legally obligated' to pay according to the terms of the settlement agreement. Accordingly, defendant concludes that this sum is all that it should be required to pay plaintiffs as assignees of the policy.
>
> * * *
>
> As to defendant's theory that liability is limited to the $10,000 Kalinich paid in partial satisfaction of the judgment, we cannot concur. The $10,000 payment arose out of a separate agreement between Kalinich and plaintiffs. It was in no way related to the legal obligation contemplated by his insurance policy with defendant and therefore, in no way limited defendant's liability."

So here, too, the agreement between Bishop and Lee Crowther cannot limit MFA's liability.

Because, as we here hold, a nonexecution covenant reserving rights against an insurance carrier is not against public policy and therefore not *ipso facto* preclude recovery by an injured party, the controlling question is whether the injury comes within the coverage of the policy.

As stated, MFA argues that the exclusions relating to business pursuits and workmen's compensation benefits apply to defeat coverage under the policy. We disagree.

As to the first mentioned exclusion, the policy provides:

> "This policy does not apply:
> Under Coverage E—Personal Liability and Coverage F—Medical Payments to Others:
>
> * * *
>
> d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits."

The policy does not define "business pursuits" but does contain the following: In the "DECLARATIONS" it is stated: "(b) no business pursuits are conducted on the described premises;" and under "DEFINITIONS" is the following:

> "a. 'Insured' means [1] the Named Insured * * *.
> b. 'insured premises' means
> (1) the residence premises described in the Declarations of this policy;
> * * *
> c. 'residence premises' means
> (1) a one or two family dwelling building, * * *; or
> (2) * * *;
> provided that such premises is used as a private residence by the Named Insured or his spouse but excluding any portion of the premises used for business purposes.
> d. 'business' means
> (1) a trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes; and
> (2) * * *."

From the provisions of the policy, it thus appears that the exclusion can be interpreted to apply only to injury or property damage arising from the operation of an insured's business out of his home. Lee Crowther was not operating a business out of his home. Further, it is not clear that "business pursuits" includes the building by a homeowner of an addition to his home. Because the language employed by MFA is ambiguous, it is to be construed against MFA.

■■ In *Williams v. Herrera* (N.M. App. 1972), 83 N.M. 680, 496 P.2d 740, Farmers Insurance Group issued to Herrera a policy covering medical payments. Herrera, the homeowner, was building his own home. Williams, a stone mason, while carrying a chimney flue liner up a ladder to the roof to make repairs, was injured when a rung broke and he fell to the ground. Williams sued Herrera and the insurance company. The trial court entered summary judgment for both defendants. On appeal, the

court affirmed as to Herrera, but reversed as to the insurance company, saying (83 N.M. 680, 684-86, 496 P. 2d 740, 744-46):

"Farmers Insurance Group issued Herrera a policy of insurance with coverage for medical payments to others. Farmers concedes that Williams' claim falls within this provision of the policy, but contends that Williams is denied medical coverage by reason of several exclusions set forth in the policy.

\* \* \*

Second, under Exclusions, Section 1(d) states:
    This policy does not apply:

\* \* \*

d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to nonbusiness pursuits; \* \* \*.

Two questions are involved. (1) Did Williams' bodily injury arise out of business pursuits of Herrera? The policy does not define the term 'business pursuits.' What is a 'business pursuit'? (2) After completion of the home, was Herrera engaged in a non-business pursuit?

Under General Condition 8(d) of the insurance policy, ' "business" means (1) trade, profession or occupation, including farming, and the use of any premises or portion of residence premises for any such purposes; \* \* \*.'

Fowler v. First National Life Insurance Co. of America, supra [378 P.2d 605 (1963)], was followed in Scott v. New Empire Insurance Company, 75 N. M. 81, 400 P.2d 953 (1965), where the court said:

We decline to adopt a strict technical or legalistic interpretation of the terms of the policy, when it was fully within the power of the insurance company to affirmatively specify some meaning other than that understood by the average individual.

The rule is now clear that 'where there is ambiguity, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean \* \* \*' and 'the ambiguity is resolved against the insurer.' Ivy Nelson Grain Co. v. Commercial Union Insurance Company, supra [453 P. 2d 587 (1969)].

(1) Before the accident occurred, Herrera was building his own home. Whether this should be considered a 'business pursuit,' it is difficult to say. We believe it is ambiguous terminology because the average layman could disagree that in its ordinary meaning,

building a home is a business pursuit. We resolve the ambiguity against the insurer and hold it was not a business pursuit."
The building of an addition to a home cannot be considered different in kind from the building of a home. The exclusion does not apply.

In addition, Lee Crowther's liability was not derivative through Crowther, Inc., which had the roofing contract. Crowther, Inc. was not in the business of constructing room additions. As this court said in its opinion affirming plaintiff's judgment (*Bishop v. Crowther* (1980), 92 Ill. App. 3d 1, 12):

> "* * * Defendant, however, is not insulated from liability because he owned stock in or was an officer of Crowther, Inc. Crowther's liability was not derivative but direct, stemming from his own conduct and actions and not those of Crowther, Inc. Crowther testified that he was acting in his individual capacity in this venture. This testimony was corroborated by other witnesses. Defendant's corporate position has no relevance in light of these admissions."

Lee Crowther was not engaged in a "business pursuit" when he acted as his own general contractor in the construction of the family room addition to his home.

In addition, exclusion 1(d) itself contains an exclusion. It does not exclude "activities therein which are ordinarily incident to non-business pursuits." (*Economy Fire & Casualty Co. v. Second National Bank* (1980), 91 Ill. App. 3d 406, 408, 414 N.E.2d 765, *appeal denied* (1981), 83 Ill. 2d 570.) "All that is excluded by this provision are injuries arising out of business pursuits. Not all that occurs on business premises are business pursuits." *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 786, 387 N.E.2d 700, *appeal denied* (1979), 79 Ill. 2d 617.

Further, the meaning of the exclusion to the exclusion is unclear and will be construed against the insurer. In *State Farm Fire & Casualty Co. v. MacDonald* (1967), 87 Ill. App. 2d 15, 20, 230 N.E.2d 513, the court said:

> "It is beyond dispute that the meaning of the phrase, 'other than activities therein which are ordinarily incident to non-business pursuits' is unclear, ambiguous, and it has long been recognized that an insurance contract is unlike most contracts. In an insurance contract, absent statutory requirements, the company determines and drafts its policy provisions. The insured takes the contract as he finds it. Any lack of clearness in the meaning of such contract is the responsibility of the insurer. That construction of the policy will be adopted which favors the insured and resolves the uncertainty in his favor. Midwest Dairy Products Corp. v. Ohio Cas. Ins. Co. of Hamilton, Ohio, 356 Ill 389, 392, 393, 190 NE 702 (1934); Iowa Nat. Mut. Ins. Co. v. Fidelity & Casualty Co., 62 Ill App 2d

297, 303, 210 NE2d 622 (1965); Country Mut. Ins. Co. v. Bergman, 38 Ill App 2d 268, 277, 278, 185 NE2d 513 (1962)."

■■ We hold that the addition of a family room is an activity "ordinarily incident to non-business pursuits" of a homeowner.

■■ MFA also argues that the business pursuits exclusion applies because of Crowther's "dual capacity" in charge both as a homeowner and because of his long specialized experience in roofing. If Lee Crowther was acting in a dual capacity, the accident occurred during the course of carrying out this dual role. Certainly, a homeowner as such is not a business capacity. It is therefore not excluded; if it were, the policy would be meaningless. Because at least one of his claimed "dual" capacities (a homeowner) is not excluded, the policy will be construed against the insurer so as to provide protection. See *Crane v. State Farm Fire and Casualty Co.* (1971), 5 Cal. 3d 112, 117, 485 P.2d 1129, 1131, 95 Cal. Rptr. 513, 515, discussing *State Farm Fire & Casualty Co. v. MacDonald*.

■■ As to the workmen's compensation benefits exclusion, the policy provides:

"The policy does not apply:

1. * * *

2. Under Coverage E - Personal Liability

a. * * *

b. to bodily injury to any person, including a residence employee, if the insured has a policy providing workmen's compensation or occupational disease benefits for such bodily injury or if benefits for such bodily injury are in whole or in part either payable or required to be provided by the insured under any workmen's compensation or occupational disease law;

* * *

3. Under Coverage F—Medical Payments to Others

a. to bodily injury to any person, including a residence employee, if any person or organization has a policy providing workmen's compensation or occupational disease benefits for such bodily injury or if benefits for such bodily injury are in whole or in part either payable or required to be provided under any workmen's compensation or occupational disease law;

b. * * *."

A reading of this provision shows on its face that it has no application for the following reasons: (1) Lee Crowther did not carry workmen's compensation insurance; Crowther, Inc. did; and plaintiff received those benefits; and (2) Lee Crowther was not required to provide that coverage. Only if plaintiff's employer did not carry that insurance could there be any possible liability for workmen's compensation benefits on the part of Lee Crowther. (Ill. Rev. Stat. 1973, ch. 48, par. 138.1; see also *Baker &*

*Conrad, Inc. v. Chicago Heights Construction Co.* (1936), 364 Ill. 386, 4 N.E.2d 953.) Such remote, and here inapplicable, contingent liability is not within the exclusion.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, P. J., and McGLOON, J., concur.