**GATES FORMED FIBRE PRODUCTS, INC., Plaintiff,**

**v.**

**IMPERIAL CASUALTY AND INDEM-NITY COMPANY and Plasti–Vac, Inc., Defendants.**

**Civ. No. 87–0222–P.**

United States District Court,
D. Maine.

Dec. 2, 1988.

See also, 687 F.Supp. 688.

Stephen B. Wade, Charles H. Abbott, Auburn, Me., for plaintiff.

John S. Whitman, William W. McCandless, Jr., Portland, Me., for defendant Imperial Cas. and Idem. Co.

Robert E. Mullen, Auburn, Me., for defendant Plasti–Vac, Inc.

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO STRIKE AFFIRMATIVE DEFENSE THAT A SETTLEMENT TERMINATED THE OBLIGATION TO INDEMNIFY UNDER THE POLICY

GENE CARTER, District Judge.

Gates Formed Fibre Products, Inc. ("Gates") is a Colorado corporation with a plant located in Maine. In 1985, Gates purchased from Plasti–Vac, Inc. ("PVI") a thermoforming machine to be used in Gates's manufacturing facility in Maine. In April 1986, Gates sued PVI for damages it suffered as a result of the thermoforming machine's failure to perform satisfactorily. Gates claimed damages totaling just over $1 million, including $200,000 as the machine's purchase price, $750,000 in lost profits, and about $45,000 in air freight charges.

In December 1986, PVI gave notice of the pending lawsuit to an agent of Imperial Casualty and Indemnity Company ("Imperial"), with whom PVI had a general insurance policy with a products liability endorsement. In February 1987 Imperial agreed to defend PVI in the lawsuit under a reservation of its rights to contest PVI's assertion that the Imperial policy covered this claim.

The jury trial began on July 13, 1987. Settlement negotiations among the three parties (including Imperial) took place before trial started, and continued into the trial, without success. No settlement had been reached when the case was committed to the jury on July 22, 1987.

On July 24, 1987, before the jury returned its verdict on that day, Gates and PVI entered into separate negotiations that culminated in a settlement agreement. Imperial was neither notified of nor invited to participate in these negotiations. It was not informed of the agreement until after it was finalized. Under the settlement agreement,[1] Gates agreed not to enforce against PVI personally any judgment obtained except to the extent of $200,000. In return, PVI agreed that, the actual jury verdict notwithstanding, a judgment of not less than $200,000 would be entered for Gates. If the actual jury verdict exceeded $200,000, the judgment was to be entered in the amount of the actual jury verdict. The agreement called for PVI to make two $100,000 payments to Gates and to cooperate fully with Gates in pursuing any claim for any excess over that amount against PVI's insurer. The agreement stated that it was not intended to release or indemnify PVI from liability, and included language intended to preserve claims against PVI's available insurance coverage.

On the same day that Gates and PVI reached their settlement agreement, the jury completed its deliberations and returned a verdict for Plaintiff in the amount of $661,189.99. The Court entered judgment in that amount, plus interests and costs.

1. The settlement agreement is attached hereto as Appendix A.

In the present action, Gates seeks a declaration of "what amount, if any, *of the judgment,* [Imperial] is obligated to pay" under the insurance policy.[2] Amended Complaint at 2 (Docket Item # 5) (emphasis added). PVI answered Gates's complaint and filed a cross-claim against Imperial in three counts. Count I of this cross-claim also seeks construction of the Imperial contract, not as to Imperial's duty to indemnify PVI, but as to "what amount, if any, of *the defense costs incurred by PVI* that Imperial is obligated to be responsible for." Cross-claim, unnumbered page three (emphasis added). That count also seeks an award of costs and attorney's fees. Count II of the cross-claim asserts a claim against Imperial for breach of contract, seeking damages of $250,000 and statutory interest and attorney's fees pursuant to 24–A M.R. S.A. § 2436. Count III asserts against Imperial a claim for damages in the amount of $500,000 for alleged bad faith breach of Imperial's contractual obligations and other conduct. The cross-claim of PVI seeks no declaration of Imperial's duty *to indemnify PVI* under the insurance policy *as to the amount of the judgment in the underlying case.*

Imperial has denied any obligation to pay either Gates or PVI and has pleaded, *inter alia,* as an affirmative defense that the

settlement agreement between Gates and PVI released Imperial from liability or, in the alternative, that the settlement limits Imperial's liability on the policy to $200,000, the amount which PVI is obligated to pay to Gates under the settlement agreement.

■ On July 15, 1988, after a second pretrial conference of counsel, the Court issued an order calling for motions and supporting materials addressing, *inter alia,*[3] the legal effect of the settlement in the underlying case on the extent of Imperial's liability exposure. Accordingly, on August 1, 1988, Gates filed the motion *in limine* now under consideration, requesting that the Court strike Imperial's affirmative defense which asserts that the settlement agreement releases or limits Imperial's liability to indemnify. In response, Imperial filed a memorandum in opposition to Gates's motion, arguing that the Gates–PVI settlement agreement releases Imperial from any obligation under the policy or, in the alternative, that the effect of the agreement limits Imperial's liability to a maximum of $200,000.[4] PVI has never filed any papers on the issue generated by Gates's motion *in limine.*

■■ The Court denies Plaintiff's mo-

---

2. Imperial has pleaded in its first answer to Gates's complaint an affirmative defense that Gates lacks standing in this matter. This defense has been pleaded in each amended answer filed by Imperial thereafter, the most recent having been filed on October 12, 1988 (Docket Item # 39).

This defense is preserved by the parties for disposition at trial, it never having been brought forward by any party for pretrial disposition. Since the Court presently has before it no factual predicate for the adjudication of that defense, nor does the pending motion seek such an adjudication, the Court intimates no opinion herein on the merits of that affirmative defense.

3. In addition to the issue raised herein, the July 15, 1988 order called for motions and supporting materials addressing the affirmative defense also asserted by Imperial of late notice by PVI of the existence of the claim. Such a motion was filed on the same date as the pending motion (Docket Item # 33). The Court does not deal with that motion herein.

4. Imperial filed no formal, freestanding objection to Gates's motion *in limine* as required by

Local Rule 19. Technically, therefore, the motion could be granted pursuant to Local Rule 19(c) as "deemed consented to." Imperial did file, however, a twenty-nine-page memorandum of law opposing the motion, the memorandum also being supported by Mr. Whitman's affidavit. Neither Gates nor PVI has ever asserted any claim to have Gates's motion granted under Local Rule 19(c).

The Court is satisfied that, considering the circumstances in which Gates's motion was generated, *see* Report of Final Pretrial Conference and Order, filed on July 15, 1988, at ¶ 3 (Docket Item # 31), and Imperial's vigorous *de facto* opposition to the motion, the technical failure to file a formal objection to the motion does not justify the granting of the motion under Local Rule 19(c). The Court and the parties clearly understood at the time of the final pretrial conference of July 15, 1988, that Imperial would object to any motion by Gates filed under ¶ 3 of the Report and Order. No prejudice results to Gates from Imperial's failure to file a formal objection as required by Local Rule 19.

tion to strike the affirmative defense.[5] On the undisputed facts as they now exist in the record, PVI settled the claim of Gates without either giving notice to Imperial of the specific negotiations leading to the actual settlement agreement or obtaining Imperial's consent to the settlement. Thereby, PVI violated the terms of the policy issued by Imperial. Accordingly, Defendant Imperial was thereby relieved of any obligation to indemnify PVI under the insurance policy, and the affirmative defense of Imperial is viable.

## ANALYSIS

### Imperial's Claim That The Settlement Agreement Releases Imperial From Its Duty To Indemnify

■ An insurance company's refusal to defend its insured against a covered claim generally constitutes breach of the insurance contract. *Arizona Property and Casualty Insurance Guaranty Fund v. Helme*, 153 Ariz. 129, 137, 735 P.2d 451, 459 (1987); Appleman, 7C *Insurance Law and Practice* § 4714 (1979). It is well settled that once an insurer breaches its duty to defend, the insured is free to proceed as he sees fit. *Ideal Mutual Insurance Co. v. Myers*, 789 F.2d 1196, 1200 (5th Cir. 1986). Thus, if an insurer wrongfully refuses to defend an action against an insured, as required by the policy, the insured is entitled to settle without jeopardizing his right to coverage otherwise available to him. Appleman, 7C *Insurance Law*

*and Practice* § 4714 at 526; *Navlyt v. State Farm Fire and Casualty Co.*, 62 Ill.App.3d 387, 19 Ill.Dec. 353, 378 N.E.2d 1228 (1978), *citing Elas v. State Farm Mutual Automobile Insurance Co.*, 39 Ill. App.3d 944, 948, 352 N.E.2d 60, 63 (1976). Because the insurer's refusal to defend leaves the insured exposed, it makes sense to permit the insured to protect himself, without penalty of loss of his coverage, through settlement.

■ Where the insurer does not refuse to defend, but rather agrees to defend under a reservation of rights, a slightly different analysis applies. Unlike an outright refusal to defend, defense under a reservation of rights does not constitute a breach of the insurance agreement. The insurer's duties to defend and to indemnify are distinct. *United Services Automobile Association v. Morris*, 154 Ariz. 113, 119, 741 P.2d 246, 252 (1987). It is possible to satisfy the former while preserving the right to dispute the latter, without breaching the insurance agreement. *See American Policyholders' Insurance Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 250 (Me. 1977) ("it is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured"). The Court of Appeals for the Eighth Circuit, holding that a defense under a reservation of rights is not a breach, noted:

> Does a liability insurer which is affording its insured a defense to a pending

---

**5.** Imperial suggests in its Memorandum in Opposition to Gates's motion *in limine* that the Court should treat the motion *in limine* as a motion for partial summary judgment. Memorandum in Opposition at 10. This the Court declines to do because the motion *in limine* does not specifically seek judgment but only the striking of Imperial's affirmative defense, and also because the question of Gates's standing to obtain a declaration of rights under the policy remains unresolved. Further, Gates's pending motion does not in any way address the claims of PVI asserted against Imperial in the cross-claim and Imperial has never formally sought summary judgment on those claims. Indeed, it does not appear from the pleadings that PVI has ever asserted any claim against Imperial for indemnification under the policy *as to the amount of the judgment in the underlying case.*

Imperial also suggests in its memorandum that the Court should grant Imperial summary judgment on the basis of the subject affirmative defense. Memorandum in Opposition at 28. However, Imperial has never filed a formal motion seeking summary judgment. The Court concludes that it would be improper for it to grant summary judgment against Gates on a motion that does not expose it to the imposition of that remedy and in the absence of any motion by Imperial seeking such relief. Clearly, there is no basis for the Court to grant, at this juncture, summary judgment against PVI on the claims set out in its cross-claim against Imperial, such relief never having been sought by Imperial by any discrete, procedural means.

action for damages breach its contract of insurance by disputing with its insured the amount of coverage that is available for the claim? ... Two aspects of the insurer's obligation are to be considered. The first is the duty to defend. It cannot be questioned that [the insurer] was affording a defense to [the insured]. The other duty is one to pay or settle. The time for performance of that duty has not been reached.

*Sargent v. Johnson*, 551 F.2d 221, 230–31 (8th Cir.1977). By agreeing to defend while preserving the right to contest coverage, the insurer satisfied its duty to defend without breaching its duty to indemnify.

Even absent actual breach of the insurance contract, however, an insurer's reservation of right to assert a policy defense may still leave the insured in the precarious position of having to satisfy an uninsured judgment. *See Arizona Property and Casualty Insurance Fund v. Helme*, 153 Ariz. at 138, 735 P.2d at 460. Thus, where the insurer defends the insured but disputes coverage, courts have permitted an insured to protect itself by settling the claim against it without jeopardizing its right to whatever insurance coverage is subsequently adjudicated to exist. *Eureka Investment Corp. v. Chicago Title Insurance Co.*, 530 F.Supp. 1110 (D.D.C.1982), *aff'd in part, rev'd in part on other grounds*, 743 F.2d 932 (D.C.Cir.1984) ("[i]t is well established that if an insurer wrongfully denies liability when its insured submits a claim, the insurer may be held liable for the costs of a reasonable settlement reached by its insured ..."); *United Services Automobile Ass'n v. Morris*, 154 Ariz. at 119, 741 P.2d at 252 ("[t]he insurer's insertion of a policy defense by way of reservation ... permits the insured to take reasonable measures to protect himself against the danger of personal liability");

*see Sargent v. Johnson*, 551 F.2d at 231 ("[t]hose few cases in which courts have permitted insureds to settle even though their insurers were affording timely defense are cases in which the insurers, while defending, denied any liability under the policies in question").

There is, however, a duty of cooperation imposed upon the parties by a standard cooperation clause [6] included in the Imperial policy. This cooperation clause has been held to require the insured to give the insurer notice of settlement opportunities and the option to participate therein, even where the insurer has reserved the right to contest coverage. In *United Services Automobile Ass'n v. Morris, supra*, while holding that the insurer's reservation permitted the insured to protect itself by settling, the court noted that notice to the insurer was a condition of this right to settle. 154 Ariz. at 119, 741 P.2d at 252 ("[settlement] agreements must be made fairly, *with notice to the insurer*, and without fraud or collusion on the insurer") (emphasis added); *see* Windt, *Insurance Claims and Disputes* § 3.09 at 121 (2d ed. 1988). Failure to provide such notice or obtain the consent of the insurer constitutes breach of the insurance contract. *Freed v. Inland Empire Insurance Co.*, 154 F.Supp. 855, 859 (D. Utah 1957); Appleman, 7C *Insurance Law and Practice* § 4714 at 521 (1979).

Condition 5 of the Imperial insurance policy provides that "[n]o action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy...." This "no action" clause is a standard liability policy feature that makes full compliance with the policy terms a condition precedent to the insurer's liability. Accordingly, failure to give notice of a

---

6. The cooperation clause in Imperial's policy in this case provides:

The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

settlement agreement as required by a policy term would constitute a failure to satisfy a condition precedent to recovery from the insurer. That Imperial was not informed by PVI, on whose rights Gates presumably stands in this action, of PVI's negotiations and the resulting settlement agreement with Gates until it was a *fait accompli* has not been disputed in this case. This failure to inform Imperial constitutes a breach of PVI's duty of cooperation and thus failure to satisfy a condition precedent to an action for liability against Imperial.

■ Whether or not this breach of the duty of cooperation relieves Imperial of its duty to indemnify, however, depends upon whether this Court requires a showing of prejudice to Imperial resulting from this failure to give notice. There is disagreement among the states as to whether lack of notice of a private settlement, without more, is sufficient to relieve the insurer of its obligation to indemnify. Some states do not require that the insurer be prejudiced as a result of the settlement. *Dairyland Insurance Co. v. Hughes,* 317 F.Supp. 928, 937 (W.D.Va.1970) (applying Virginia law); *Ohio Casualty Insurance Co. v. Ross,* 222 F.Supp. 292, 296 (D.Md.1963) (applying Maryland law); Windt, *Insurance Claims and Disputes* § 3.09 at 121. Other states require a showing of prejudice resulting from the insured's action. *Ideal Mutual Insurance Co. v. Myers,* 789 F.2d 1196, 1203 (5th Cir.1986) (applying Texas law); *Globe Indemnity Co. v. Blomfield,* 115 Ariz. 5, 7, 562 P.2d 1372, 1374 (1977). Maine courts have not addressed this issue. This Court determines that the proper reading of the insurance contract under Maine law [7] does not require a showing of prejudice to the insurer.

The cooperation clause does not prohibit the insured from seeking a settlement agreement, but makes only the reasonable requirement that the insured give the insurer notice before entering the agreement. Under the no action clause of the Imperial contract, PVI's compliance with the cooperation clause is a condition precedent to Imperial's liability. *Munster Steel Co. v. Travelers Indemnity Co.,* 620 S.W. 2d 771, 772 (Tex.Civ.App.1981); *Ohio Casualty Insurance Co. v. Ross,* 222 F.Supp. at 297 (applying Maryland law). The cooperation clause language is clearly included to protect the insurance company from settlements that are detrimental to its interests. "The design of the [cooperation clause] . . . was not only to obviate the risk of a covinous or collusive combination between the assured and the insured third party, but also to restrain the assured from voluntary action materially prejudicial to the insurer's contractual rights. . . ." *Kindervater v. Motorists Casualty Insurance Co.,* 120 N.J.L. 373, ——, 199 A. 606, 608 (N.J.1938). Prejudice arising from a lack of notice to the insurer may be very difficult to establish. To establish prejudice, the insurer would have to prove that the result of the settlement negotiations would have been more favorable to it had it received notice and been permitted to participate in settlement negotiations. This would place an unfair burden on the insurer to prove what is really, at best, almost always a highly speculative fact. To require a demonstration of substantial detriment to the insurer as a result of lack of notice would therefore seriously impair the practical efficacy of the cooperation clause, *id.,* if it does not eviscerate it entirely.

Holding that the insurer must show prejudice resulting from the insured's failure to notify of the settlement would require this Court to read nonexistent language into the insurance contract. Gates correctly cites *Baybutt Construction Corp. v. Commercial Union Insurance Co.,* 455 A.2d 914 (Me.1983), for the proposition that Maine courts construe insurance contracts strongly against insurers. It would be wrong, however, to cite the *Baybutt* opinion as authority for rewriting unambiguous insurance policy language simply because the language, as writ ten, favors the insurer over the insured. The *Baybutt* opinion addressed a fact scenario involving ambigu-

---

7. This Court has ruled previously that Maine law applies in construing this insurance con-

tract. *Gates Formed Fibre Products v. Plasti-Vac, Inc.,* 687 F.Supp. 688 (D.Me.1988).

ous language in the insurance policy concerning coverage. *Id.* at 920. The Maine Law Court in *Baybutt* resolved this ambiguity by construing the policy language against the insurer.

Here, in contrast, there is no question that PVI's failure to notify Imperial of its settlement agreement violated an unambiguous notice requirement in the policy. Another unambiguous policy provision prevents the bringing of any action against Imperial unless there is full compliance with the policy terms. PVI's lack of notice to Imperial constituted a failure to comply fully with clear policy terms, relieving Imperial of its liability without regard to actual prejudice.

Accordingly, it is ORDERED that Plaintiff Gates's motion to strike Imperial's affirmative defense that the settlement terminated Imperial's obligation to indemnify Gates be, and it is hereby, DENIED.

## APPENDIX A

### UNITED STATES DISTRICT COURT

### DISTRICT OF MAINE

GATES FORMED–FIBRE
PRODUCTS, INC., Plaintiff

v.

PLASTI–VAC, INC., Defendant

CIVIL NO. 86–0126 P

### SETTLEMENT AGREEMENT

The above agreement is made this 24th day of July, 1987, by and between Gates Formed–Fibre Products, Inc. (Gates) and Plasti–Vac, Inc. (PVI);

WHEREAS, the above parties are presently involved in a lawsuit pending in the United States District Court, Portland, Maine; and

WHEREAS, the above case has gone to the jury and at the time of this agreement the jury is deliberating; and

WHEREAS, the parties wish to settle the above case, in part;

NOW, THEREFORE, it is stipulated and agreed by the parties that without regard to the actual jury verdict, a verdict in the amount of not less than Two Hundred Thousand Dollars ($200,000), plus interest and costs, shall be entered for Gates on both counterclaim and claim. If the actual jury verdict is greater than $200,000, then that verdict shall be entered by the court in that amount.

If PVI complies with the following conditions completely and on time, then Gates shall agree as more fully set forth below.

*Condition # 1:* PVI pays One Hundred Thousand Dollars ($100,000) to Gates on or before thirty (30) days after the date of this agreement;

*Condition # 2:* PVI pays One Hundred Thousand Dollars ($100,000) to Gates on or before December 11, 1987;

*Condition # 3:* PVI, its officers and directors shall fully cooperate with Gates in pursuing any insurance PVI has available, this cooperation includes, but is not limited to, traveling to the place of trial, including Maine, for the purpose of testifying. All cooperation, including travel, shall be at PVI's expense.

If, and only if, PVI *strictly* complies with the above agreement in *every* regard, including the dates of payment, Gates agrees as follows:

1. It will not undertake any action to enforce the judgment against PVI personally;

2. It will file a satisfaction of judgment when all matters contemplated by the agreement have been complied with including, but not limited to, exhausting all insurance coverage.

This agreement anticipates that the machine shall remain the property of Gates.

This agreement is not intended or shall be construed as a release or indemnity of PVI or of any of its agents or employees. This agreement specifically anticipates and seeks to preserve the issue of available insurance coverage which the parties intend to pursue.

Harvey Diamond, personally and as President of PVI, agrees and covenants not to transfer any significant assets or pay himself or other employees extraordinary compensation, or otherwise take any action to reduce or impede PVI's ability to pay the

judgment in the above case. Further, Harvey Diamond, personally and as President of PVI, agrees not to pay *any* debts of the corporation to himself, or to pay any debts or prefer any creditor other than in the ordinary course of PVI's business. Ordinary course of business shall be construed in accordance with the bankruptcy laws of the United States wherein that phrase is used.

The above agreement concerning the solvency of PVI shall not affect any rights Gates may have including, but not limited to, fraudulent conveyance statutes.

The parties agree that this agreement shall be made part of the record of the underlying lawsuit. The parties further agree that in the event of a dispute as to the language or effect of this agreement, or violation of this agreement, the United States District Court, District of Maine, in the person of the United States Magistrate without a jury, shall have sole and full authority to construe and enforce the terms of this agreement. In the event of a dispute, either party may apply to the court for clarification, construction or enforcement.

/s/Harvey Diamond
Harvey Diamond, Personally and as President of Plasti–Vac, Inc.
/s/Stephen B. Wade
Stephen B. Wade, as Attorney for Gates Formed–Fibre Products, Inc.