AETNA INSURANCE COMPANY, Plaintiff-Appellant, *v.* HERBERT JANSON, SR., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-472

Opinion filed May 26, 1978.

Wildman, Harrold, Allen & Dixon, of Chicago (Harold W. Huff, Lenard C. Swanson, Fred E. Schulz and Edward F. Ruberry, of counsel), for appellant.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Clinton J. Feil and Robert L. Kiesler, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Relying on *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24, the trial court dismissed plaintiff's action for declaratory judgment by which it sought a determination that it had no duty to defend separate suits for wrongful death and for property damage brought against its insureds, Herbert Janson, Sr. and Herbert Janson, Jr. Plaintiff appeals, contending that the trial court misapplied *Maryland* because the allegations of the complaints in each action, as narrowed by an admission of the insured, fell without the scope of the policy's coverage and, alternatively, that the *Maryland* rule is an unsound proposition of law which, as applied in the instant case, is violative of the due process clauses contained in the Illinois and United States Constitutions.

The homeowners policy issued by plaintiff to Janson, Sr., was in effect at all times relevant to this appeal and included within its definition of the term "Insured" were Janson, Sr., as the named insured, and Janson, Jr., as the minor child residing in his father's household. The policy provided coverage for bodily injury and property damage caused by an insured upon premises other than the residence of the named insured, as follows:

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applied, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient."

However, it was also provided that such coverage is not applicable "to bodily injury or property damage arising out of business pursuits of any Insured except activities therein which are ordinarily incident to non-business pursuits" and "to bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

On November 14, 1972, a fire occurred on the premises of Belmont Bowl, Inc. (Belmont), which resulted in the death of a business invitee, Maria Aguillera, and in property damage to the premises. Belmont submitted a damage claim to its fire insurer, Globe Indemnity Company, and received $21,170.48 in settlement. As Belmont's subrogee, Globe sued the Jansons for this amount alleging in count I that Janson, Jr., as a business invitee, negligently started the fire which caused the damage; in count II that Janson, Jr. did so wilfully and wantonly; and in count III that under the Parental Responsibility Law (Ill. Rev. Stat. 1971, ch. 70, par. 51 *et seq.*) Janson, Sr., was liable to the extent of $500 for the property damage wilfully caused by Janson, Jr.

Subsequently, Eulalio Sanchez, administrator of the estate of the deceased, Maria Aguillera, brought a wrongful death action against Belmont and the Jansons. The complaint alleged in count I that the Jansons were employees of Belmont, acting within the scope of their employment, when Janson, Sr., negligently allowed his son access to a closet containing electrical switches where he "set fire to the premises thereby causing the death of plaintiff's intestate." The complaint also alleged defendants, including Janson, Sr., were negligent in allowing access to the closet by keeping it unlocked, in allowing Janson, Jr., to go upon the premises when they knew of his pyromaniacal tendencies, in failing to warn of the fire after it had started and in not protecting business invitees. In count II, it alleged that the acts and omissions set forth in count I were done in a wilful and wanton manner and, in count III, that Janson, Jr., intentionally set the fire. The Jansons tendered the defense of both suits to plaintiff, which hired a private attorney to protect the Jansons' interests under a full reservation of rights.

Thereafter, plaintiff instituted the instant declaratory judgment action, alleging generally that the Sanchez and the Globe complaints, when considered in conjunction with an admission of Janson, Jr., that he deliberately started the fire, alleged only intentional injuries and damages. Thus, it asserted that neither of the underlying suits came within the policy's coverage and, therefore, that it had no duty to defend them.

After being advised by the submitted documents and the argument of counsel, the trial court's order stated:

> "That this cause is dismissed without prejudice to any party to reraise the issues of the Complaint following the disposition of the

underlying causes based upon the holding of *Maryland* [sic] *v. Peppers*, 64 Ill. 2d 187 (1976), said cause being premature.

It is further ordered that Aetna Insurance Company may present any and all defenses to the policy in any future proceedings."

OPINION

Plaintiff first contends that under *Maryland* the Sanchez complaint, which alleged that the Jansons were acting within the scope of their employment, came within the policy provision that coverage did not apply to bodily injury and property damage "arising out of business pursuits of any Insured" and, therefore, that it was not required to defend that suit. We cannot agree.

■■■ As stated in *Maryland*, the pertinent inquiry is as follows:

"In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established. [Citations.]

This duty to defend extends to cases where the complaint alleges several causes of action or theories of recovery against an insured, one of which is within the coverage of a policy while the others may not be. [Citations.]" (64 Ill. 2d 187, 193-94, 355 N.E.2d 24, 28.)

Even where an insured is "generally engaged in a 'business pursuit,' " the policy exclusion of "business pursuits of an Insured, other than activities therein which are ordinarily incident to non-business pursuits" has been viewed as unclear requiring an investigation of the particular act or omission complained of in order to determine whether such were "ordinarily incident to non-business pursuits." (*State Farm Fire & Casualty Co. v. MacDonald* (1967), 87 Ill. App. 2d 15, 17-20, 230 N.E.2d 513, 514-15.) In this regard, it was stated in *MacDonald* that:

"A construction of the clause of the policy in question which resolves the uncertainty in favor of the insured can be made without perverting the ordinary meaning of the exclusionary clause. Under the language of the clause, it is definite and clear that certain types of activities which occur as a part of 'business pursuits' were meant to be covered by the contract and included within the protection' afforded by the policy. The incident [momentary horseplay] under consideration occurred during a business pursuit, and it is at least as logical to conclude that the defendant's impulsive action, which caused the injury, was the

type ordinarily incident to a nonbusiness pursuit, as it would be to reach an opposite determination. Equivocal expressions in an insurance contract whereby an insurer seeks to narrow the range of its liability are properly construed most strongly against the insurer. [Citation.]" (87 Ill. App. 2d 15, 20, 230 N.E.2d 513, 516.)

Moreover, the granting or denial of declaratory relief is a matter for the sound discretion of the trial court, whose determination absent abuse will not be disturbed on appeal. *Bruns v. Foremost Insurance Co.* (1975), 27 Ill. App. 3d 50, 325 N.E.2d 815.

■■ Here, Sanchez alleged that the Jansons were acting within the scope of their employment when (1) Janson, Sr., allowed his son access to a closet containing electrical switches where the fire was set; (2) Janson, Sr., allowed his son on the premises knowing of his pyromaniacal tendencies; (3) the Jansons failed to properly warn and/or protect business invitees once the fire started. Although the Sanchez allegations are sufficient to show that the insureds were involved in a business pursuit, they fall far short of the specificity required to determine whether the particular acts or omissions were of the type incident to nonbusiness pursuits. As pointed out in *MacDonald,* certain acts or omissions occurring while one is generally engaged in a business pursuit are not intended to be excluded from coverage and, because any ambiguity as to whether such acts are covered is to be resolved in favor of the insured, we must conclude that the trial court did not err in its determination that the Sanchez complaint in this respect alleged facts potentially within the coverage of the policy. *Maryland.*

We next turn to the contention of plaintiff that Janson, Jr.'s admission that he deliberately set the fire so narrowed the allegations of the complaints that they stated only intentional injuries and damages—the liability for which is excluded from policy coverage. We cannot agree.

In *Maryland,* the suit filed against the insured for bodily injury was in three counts, which alternatively alleged injury caused negligently, wilfully and wantonly, or intentionally. In the declaratory judgment action to determine the insurer's duty to defend under the provisions of a homeowners policy similar to the one in the case at bar, the trial court found that the insured had acted intentionally and, therefore, that the insurer did not owe the insured the duty of defense. On the following basis, the Illinois Supreme Court rejected this finding, stating:

> "Under the principle of collateral estoppel the finding in the declaratory judgment action that the injury was intentionally inflicted could possibly establish the allegations of the assault count in the complaint and might preclude [the underlying complainant's] right to recover under the other theories alleged. [Citations.] In a case quite similar to ours the appellate court held

that the ruling and judgment of the trial court in a declaratory judgment action under such circumstances were 'premature' and should be reversed. [Citation.] We agree with that holding. The finding of the trial court in our case that the injury was intentional was not proper in this declaratory judgment action. This issue was one of the ultimate facts upon which recovery is predicated in the * * * personal injury action * * *, which had been filed considerably before the declaratory judgment action had been instituted. [Citations.]" 64 Ill. 2d 187, 197, 355 N.E.2d 24, 30.

■■    Here, after the underlying complaints had been filed, plaintiff sought in its action for declaratory judgment to go beyond the allegations of intentional and unintentional injury and damage in those complaints and foreclose coverage solely by proving through Janson, Jr.'s admission that the allegations of intentional injury and damage would be ultimately successful. In *Maryland*, the evidence was that the insured "[b]ecause [his business] had been burglarized on numerous occasions * * * had been staying in that building at night. * * * [H]e was awakened by a noise at the door which he determined was caused by someone trying to break in. When he went to the door he saw a person fleeing. He shouted for him to stop and then fired his shotgun, wounding the fleeing person * * *" (64 Ill. 2d 187, 191-92, 355 N.E.2d 24, 27.) It is unclear whether the *Maryland* trial court's finding of intentional infliction of injury was based upon admissions in the testimony of the insured; but, in any event, we do not believe that the character of the evidence alters the unequivocal rule of *Maryland* that the duty to defend rises or falls upon the allegations of the underlying complaint and not upon evidence that the underlying suit will ultimately succeed upon only one of its alternative theories. Therefore, as both underlying complaints alleged alternative theories of recovery, at least one of which in each case encompassed unintentional infliction of injury or damage, we cannot say that the trial court erred in dismissing plaintiff's complaint for declaratory relief.

Plaintiff next contends that the general rule as expressed in *Maryland* is not applicable here in view of the admission of Janson, Jr. It asserts that the majority and better-reasoned rule in other jurisdictions allows the insured to go beyond the face of the underlying complaint where the insured has made an admission of acts not within policy coverage, and it suggests that we should discard the rule of *Maryland*. It posits that this majority rule "is in accord with modern realities, is less arbitrary; promotes good faith by the insured; and promotes even handed treatment of all parties." We cannot agree that *Maryland* is not applicable, for two reasons.

First, we believe the following language in *Maryland* establishes that

our supreme court gave careful consideration to choosing the rule which facilitates fairness to all parties.

"The holding that [the insurer] is obligated to defend [the insured] and that it was not proper in the declaratory judgment action to determine that the injury was intentional creates a situation in which there is an unresolved conflict between the interests of the insured and of the insurer. In the personal injury action if [the insured] is held responsible, it would be to his interest to be found negligent, which, under the policy of insurance, would place the financial loss on [the insurer]. On the other hand it would be to [the insurer's] interest to have a determination that [the insured] intentionally injured [the underlying complainant], which, by the terms of the policy, would relieve [the insurer] of the obligation to pay the judgment. The existence of conflicts of this nature has been widely recognized by the courts and writers, with little accord as to the resolution of the problem. [Citations.]

Because of this conflict of interests, serious ethical questions prohibit an attorney from representing both the interests of [the insurer and the insured]. [Citation.] If [the insured] is willing to accept the defense furnished by the attorney engaged by [the insurer] after full disclosure to him by the attorney of the conflicting interests, the requirement of the Code of Professional Responsibility will be satisfied. Also, if [the insurer] waives its defense of noncoverage by the policy of an intentional injury and defends without asserting a reservation of rights or nonwaiver agreement as to such an injury the conflict of interests will be removed.

Absent the acceptance of the defense by [the insured] or the waiver by [the insurer], [the insured] has the right to be defended in the personal injury case by an attorney of his own choice who shall have the right to control the conduct of the case. By reason of [the insured's] contractual obligation to furnish [the insured] a defense it must reimburse him for the reasonable cost of defending the action. Also, [the insurer] is entitled to have an attorney of its choosing participate in all phases of this litigation subject to the control of the case by [the insured's] attorney, and [the insurer] is not barred from subsequently raising the defense of noncoverage in a suit on the policy." 64 Ill. 2d 187, 197-99, 355 N.E.2d 24, 30-31.

Second, we are bound by the pronouncements of the supreme court and cannot consider usurping its authority upon the allegations that its judgment was unwise. *People v. O'Neal* (1976), 40 Ill. App. 3d 448, 352 N.E.2d 282.

Lastly, plaintiff contends that the *Maryland* rule deprives it of due process of law in that its property is being taken and state law denies it the right to be heard. Again, we cannot agree. The policy in question speaks of the duty to defend in the following terms:

> "This Company shall have the right and duty, at its own expense, to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if the allegations of the suit are groundless, false or fraudulent * * *."

The *Maryland* rule in effect does no more than condition the duty to defend upon the allegations of the underlying complaint, which appears to be in accord with the above quoted language defining the parameters of plaintiff's duty here in terms of the allegations of the underlying suit.

■■ In the instant case, plaintiff was accorded a hearing to determine whether the allegations of the underlying complaints stated facts within or potentially within the policy's coverage. Moreover, as stated in *Maryland* and here in the trial court's order, only the duty to defend has been litigated, with plaintiff being free to "present any and all defenses to the policy in any future proceedings." Therefore, it cannot be said that the dismissal of the instant cause denied plaintiff due process of law.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.