ECONOMY FIRE AND CASUALTY COMPANY, Plaintiff-Appellee, *v.* SECOND NATIONAL BANK OF DANVILLE, Trustee, *et al.*, Defendants-Appellants.—(FIRST NATIONAL BANK OF DANVILLE, Ex'r of the Will of Richard I. Nicholes, Deceased, *et al.*, Defendants.)—ECONOMY FIRE AND CASUALTY COMPANY, Plaintiff-Appellee, *v.* SECOND NATIONAL BANK OF DANVILLE, Trustee, *et al.*, Defendants.—(JOHN E. SEBAT *et al.*, Defendants-Appellants.)

Fourth District   Nos. 16225, 16236 cons.

Opinion filed November 18, 1980.

Charles W. Hendrix, of Champaign, for appellants Second National Bank of Danville *et al.*

Hurshal C. Tummelson, of Urbana, for appellants John E. Sebat *et al.*

William J. Brinkmann, of Thomas, Mamer, Haughey & Miller, of Champaign, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

These consolidated appeals lie from an order of the circuit court of Vermilion County declaring the rights of the parties (Ill. Rev. Stat. 1979, ch. 110, par. 57.1) under a certain insurance policy commonly known as a Homeowners Policy. The trial court declared that exclusions applied to the factual situation presented and defendants have appealed.

The policy is in the usual form and contains an almost impenetrable maze of verbiage—conditions, definitions, exceptions, additional conditions, supplementary coverages—such as to baffle even a Byzantine theologian. While the final order of the trial court does not specify which exclusion it relied upon in reaching its determination, the record indicates that three exclusions were argued extensively, and it is on these three that the ultimate conclusion will depend.

The factual basis for the proceeding was presented by stipulation and affidavit. These documents revealed that the policy, which was admitted to be true and accurate and in force at the time of the occurrence, was issued to and covered Richard I. Nicholes. Section I of the policy (not involved here) had to do with his dwelling and personal property. Section II, which is the source of controversy here, covered personal liability. Mr. Nicholes was an attorney and leased a suite of offices in the Adams Building in Danville from another attorney on a month-to-month basis. The Adams Building was held in trust by the Second National Bank of Danville, defendant herein, for the benefit of Paul and Eva Sudlow, also defendants. On February 13, 1975, Mr. Nicholes was in his office and lit some matches. This caused a fire which spread to other parts of the building and caused considerable damage. Subsequently Mr. Nicholes died, and the First National Bank of Danville, as his executor, was made a party-defendant to these proceedings together with others who suffered property damage in the fire.

The operative portions of the policy insofar as they pertain to this litigation read as follows:

## "SECTION II
## COVERAGES

### COVERAGE E—PERSONAL LIABILITY

This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. * * *

### EXCLUSIONS

THIS POLICY DOES NOT APPLY:

1. Under Coverage E—Personal Liability
* * *

d. to bodily injury or property damage arising out of business pursuits of any insured except activities therein which are ordinarily incident to non-business pursuits;

e. to bodily injury or property damage arising out of any premises, other than an insured premises, owned, rented or controlled by any Insured; * * *

2. Under Coverage E—Personal Liability
* * *

d. to property damage to property occupied or used by the Insured or rented to or in the care, custody or control of the Insured or as to which the Insured is for any purpose exercising physical control; * * * ."

■■ The general rule by which an insurer is required to defend its insured is familiar. "If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the policy the duty to defend has been established." *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.

The damage complaints which underlie the instant complaint for declaratory judgment allege that the decedent "negligently and carelessly threw a lit match into the waste basket of his office" thereby causing the fire which damaged other offices in the same building. The stipulation of facts upon which the instant suit proceeds state that the decedent "lit some matches which started a fire in his suite." It will be noted that exclusion 1(d), recited above, contains an exclusion to an exclusion. Therefore, if lighting a match by the decedent were a business pursuit, the exclusion would apply; if the lighting were not a business pursuit but an incident to a nonbusiness pursuit, the exclusion would not apply. The parties differ in the inferences which they draw from the bare fact of the lighting of the match. Defendants argue that the match was lit for the purpose of lighting a cigarette or pipe and therefore the action was a

nonbusiness pursuit. Plaintiff, on the other hand, argues that decedent may have been burning some business records, or lighting a client's cigarette or pipe, and therefore the action was a business pursuit.

■■ Since there was no direct evidence of what in reality occurred with the match, the factual basis supporting coverage becomes speculative and ambiguous. In such a situation the law is that any ambiguity must be resolved against the insurer and in favor of the insured. *Maryland v. Peppers*; *Aetna Insurance Co. v. Janson* (1978), 60 Ill. App. 3d 957, 377 N.E.2d 296.

Additionally, any language in the policy which is ambiguous will be construed against the insurer and in favor of the insured. Language substantially similar to that of exclusion 1(d) has been held to be unclear and ambiguous in *State Farm Fire & Casualty Co. v. MacDonald* (1967), 87 Ill. App. 2d 15, 230 N.E.2d 513.

■■ We therefore hold that exclusion 1(d) does not apply in this case and agree with the *MacDonald* court in its statement that "[u]nder the circumstances of this case and the pertinent provisions of the policy, we believe that further inquiry into the enigma of the meaning of the exception to the exclusionary clause would be fruitless." 87 Ill. App. 2d 15, 21, 230 N.E.2d 513, 516.

We turn next to a consideration of exclusion 1(e). Two cases, reaching differing results, which have construed this language have been cited to us. Plaintiff refers us to *State Farm Fire & Casualty Co. v. Stinnett* (1979), 71 Ill. App. 3d 217, 389 N.E.2d 668, in which the exclusion was held to apply. Defendants cite *Lititz Mutual Insurance Co. v. Branch* (Mo. App. 1977), 561 S.W.2d 371, in which it was held not to apply.

A reading of the exclusion reveals that two conditions must coincide for it to become operative: (1) a defect must arise out of the premises other than the insured premises, and (2) the premises must be owned, rented or controlled by the insured. We therefore find that the *Branch* court is more persuasive than the *Stinnett* court in its interpretation. *Stinnett* places the primary emphasis on the control of the other premises and ignores the requirement that some defect arise from those premises. We agree with the *Branch* court in its statement that "[t]here appears to be little reason to exclude personal tortious conduct occurring on owned but uninsured land, as little correlation exists between such conduct and the land itself." 561 S.W.2d 371, 374.

■ In the instant case, as pointed out above, there is no direct evidence that the damage was caused by a defect arising out of the premises. Therefore, as with exclusion 1(d), the language will be construed against the insurer and in favor of the insured. Exclusion 1(e) does not apply.

○ 5 Finally, we will consider briefly exclusion 2(d). The two underlying complaints which gave rise to this declaratory judgment action contain a

total of six counts. Five of them concern premises other than the specific suite occupied by Mr. Nicholes, and in which the fire started. By the plain wording of exclusion 2(d), Nicholes' suite is excluded. As to the other five counts, there is no evidence that Nicholes exercised any control over the premises covered by those counts, and therefore exclusion 2(d) does not apply.

■■ The order of the circuit court of Vermilion County declaring the plaintiff herein had no duty to defend, and that the policy in question provided no coverage for the decedent, or his executor, is affirmed insofar as decedent's own office suite is concerned (being count II in underlying suit No. 77-L-140); the order is otherwise reversed.

Affirmed in part and reversed in part.

MILLS, P. J., and CRAVEN, J., concur.