INSURANCE COMPANY OF ILLINOIS, Plaintiff-Appellee, v. STELLIOS MARKOGIANNAKIS, a/k/a Stanley Markogiannakis, *et al.*, Defendants-Appellants.

First District (5th Division) Nos. 1—87—2758*, 1—87—2789 cons.

Opinion filed September 8, 1989.

---

*This case was assigned to the fifth division on April 14, 1989.

Hokin & Melber, and John C. Griffin, of Griffin & Gallagher, both of Chicago (Gary S. Hokin, of counsel), for appellants.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Margaret J. Orbon, and Helen Marie Ryan, of counsel), for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Insurance Company of Illinois (ICI) brought this declaratory judgment action in the circuit court of Cook County to determine coverage under its homeowner's policy issued to defendants Stellios Markogiannakis (Markogiannakis) and his wife, Pauline Markogiannakis, for their Chicago home. ICI sought a declaration that it had no obligation to defend or indemnify Markogiannakis under the terms of this policy in connection with a personal injury lawsuit brought against him by Julia Crawley (Crawley), also a defendant in the declaratory action. After the court in the underlying personal injury suit found Markogiannakis liable for negligence in causing Crawley's injuries, and awarded her $17,000 in damages, the court in the declaratory pro-

ceeding granted ICI's motion for summary judgment. The trial court ruled that by operation of two exclusionary provisions in the policy, ICI had no duty to defend or indemnify Markogiannakis in the Crawley suit, or to reimburse him for the costs of his defense. The court also denied Markogiannakis' cross-motion for summary judgment. After their motions for reconsideration were denied, the defendants filed this appeal.

The following facts, brought out during the trial of the personal injury suit, also appear in the record of the declaratory action now under review. On March 19, 1984, Markogiannakis, a professional musician, went to a condominium building located at 6151 West Marshall, Chicago Ridge, Illinois, in order to personally collect rent from John Mason. Markogiannakis owned the condominium unit in which Mason resided, but had rented it to Mason on a continuing basis for about three years. After visiting Mason's apartment and collecting the $350 monthly rent payment in cash, Markogiannakis was walking away from Mason's unit. Julia Crawley, an officer in the building's condominium association, called him into her unit, which was across the hall. Because Markogiannakis had apparently not paid required condominium association fees, Crawley had intercepted him in an attempt to collect them. Inside the Crawley apartment, a heated discussion ensued. While there is some dispute as to exactly what was said by Crawley and Markogiannakis, it is clear that Markogiannakis refused to give Crawley any money or payments. Markogiannakis became upset during this discussion, and Crawley was either knocked to the floor by a door in her unit or knocked down by Markogiannakis directly. In either case, she suffered physical injuries as a result of what the trial judge ultimately determined was Markogiannakis' negligent conduct.

Crawley filed a simple two-count complaint against Markogiannakis in December 1984. In the complaint, she alleged that she was the owner of a certain residential condominium unit at 6151 West Marshall in Chicago Ridge, Illinois; that on or about March 19, 1984, Markogiannakis was present in her condominium unit; and "that at [this] time and place, the defendant was guilty of [certain] acts." Count I alleged that the defendant "negligently and carelessly pushed open the door which came in contact with [her]" and/or "bumped into [her]," causing her to be knocked to the floor with such force that she was required to seek costly medical care for her injuries. Count II, based on the same occurrence, alleged that defendant's "intentional and/or willful and wanton acts," including harsh language and hitting or pushing her, caused her injuries. The complaint contained no state-

ments or allegations relating to a discussion between Crawley and Markogiannakis, or to what the topic of any conversation between them might have been. Nor did it allege or indicate any business-related or other purpose of the defendant in being in Crawley's unit or building on the day in question. It requested an award of $15,000 in damages.

Markogiannakis notified ICI about the Crawley suit in June 1985. In response, ICI sent Stellios and Pauline Markogiannakis a letter, stating that it was forwarding the matter to its attorneys for consideration, but was also reserving its rights under the policy conditions, "due to intentional act allegations *** and the possibility that [Markogiannakis] w[as] acting in a professional capacity at the time of the incident." ICI further suggested that Markogiannakis retain his own attorney, "due to the possible conflict." A follow-up letter of August 29, 1985, advised the insureds that their policy did not provide coverage for the Crawley incident "because Mr. Markogiannakis was acting intentionally and in a professional capacity" at the time. ICI again suggested that Markogiannakis hire his own attorney to defend him in the Crawley litigation. Having refused to defend, ICI took no part in those proceedings. Private attorneys retained by Markogiannakis conducted his defense.

On September 13, 1985, approximately two weeks after sending the August 29 denial letter, ICI filed a complaint for declaratory judgment against Stellios and Pauline Markogiannakis and Julia Crawley. In count I, ICI asked the court to find that Crawley's personal injury complaint alleged "intentional and/or willful and wanton" conduct which was not covered by the policy issued to Markogiannakis because the policy specifically excluded coverage for medical payments to others for conduct which was "expected or intended" by the insured. Count II alleged that Markogiannakis had been present on the same premises where Crawley's condominium unit was located "for the purpose of collecting rent from his tenant," and that "at such time," Crawley inquired of Markogiannakis "regarding the payment of condominium association fees." Therefore, because the underlying complaint charged its policyholder with "conduct which arose out of the rental of his condominium unit," a policy exclusion for bodily injury liability "arising out of the rental or holding for rental of any premises by any insured" relieved ICI of any responsibility to either defend or indemnify Markogiannakis in connection with that lawsuit.

In his answer to ICI's original complaint (and later in his answer to plaintiff's amended complaint), Markogiannakis admitted (1) that he was on the same premises where Crawley's condominium was lo-

cated for the purpose of collecting rent, and (2) that Crawley inquired of him regarding the payment of condominium association fees. He denied all allegations of noncoverage. His answer also included a request for all costs incurred in defending the Crawley suit, including attorney fees, and a ruling that ICI be required to indemnify him for any judgment awarded to Crawley.

On March 14, 1986, six months after filing the declaratory suit, ICI amended its complaint to add count III, which alleged that another policy exclusion, relating to medical payments to others "arising out of any premises owned or rented to any insured which is not an insured location," also precluded liability coverage and relieved it of any duty to defend or indemnify. On October 8, 1986, ICI filed a "request for admission of facts and genuineness of documents," which, *inter alia*, asked Markogiannakis to make the following admissions within 28 days: (1) that on March 19, 1984, defendant was renting a condominium at 6151 West Marshall, Chicago Ridge, Illinois, to John Mason; (2) that John Mason had rented the condominium referred to for approximately three years prior to March 19, 1984; and (3) that it was customary for the defendant to personally go each month to the condominium referred to for the purpose of collecting rent from his tenant, John Mason. Nowhere in the record is there evidence that Markogiannakis responded to this request within the time limit or thereafter. In the absence of denial or objections, these facts were admitted pursuant to Supreme Court Rule 216(c). 107 Ill. 2d Rules 216(a), (b), (c).

In December 1986, the trial in the underlying Crawley suit concluded. The court found in favor of Crawley on count I (negligence) and in favor of Markogiannakis on count II (willful and wanton and/or intentional conduct). Crawley was awarded $17,000 plus costs. On March 4, 1987, following substitution of attorneys for the Markogiannakis defendants, ICI filed a motion for summary judgment in the declaratory proceeding, stating that it owed no duty to defend the insured because there was no potential for coverage due to policy exclusions for injuries arising out of intentional acts, out of business pursuits or the rental of his condominium, and out of a condominium which he owned which was not an insured location. It followed, argued ICI, that it was not obligated to indemnify Markogiannakis for the judgment entered in favor of Crawley. The trial court granted ICI's motion, holding that the insurance company had no duty to defend, indemnify, or reimburse Markogiannakis for the costs of his defense in the Crawley action. The court specifically found that the business pursuits and rental provisions, as well as the premises exclusion,

applied to the incident at issue, precluding coverage under the policy and any insurer liability under its terms.

OPINION

On appeal, defendants raise the following issues: (1) whether ICI, by its actions, breached its duty to defend Markogiannakis in the Crawley lawsuit and is therefore liable for the full amount of the judgment entered against him; (2) whether the occurrence of March 19, 1984, arose out of business pursuits or the rental or holding for rental of any part of any premises by an insured, within the meaning of the policy exclusion; and (3) whether Julia Crawley's injuries arose out of any premises owned or rented to any insured which is not an insured location, within the meaning of the policy exclusion. They contend that because ICI failed to secure a declaratory judgment either prior to or during the pendency of the underlying lawsuit, it breached its duty to afford Markogiannakis a defense as required by the policy and by Illinois law and is thereby estopped from raising any exclusionary defenses to indemnification. They also maintain that the policy's exclusionary provisions were not applicable to the occurrence in the Crawley apartment and that, consequently, Markogiannakis' negligent conduct was within the policy's liability coverage.

It is undisputed that the plaintiff issued to Stellios and Pauline Markogiannakis a homeowner's insurance policy with coverage extending from October 24, 1983, to October 24, 1984, and that this policy was in full force and effect at the time of Crawley's injuries. The policy contained the following relevant provisions.

"SECTION II—LIABILITY COVERAGES

COVERAGE E—PERSONAL LIABILITY. If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage to which this coverage applies, we will:

a. pay up to our limit of liability for the damages for which the insured is legally liable; and

b. provide a defense at our expense by counsel of our choice. *** Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the *occurrence* [emphasis added] equals our limit of liability.

COVERAGE F—MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred *** within three years from the date of an accident causing bodily injury. *** This coverage does not apply to you or regular residents of your household *** As to others, this coverage applies only:

b. to a person *off the insured location* [emphasis added], if the bodily injury:

(2) is caused by the activities of any insured; ***

SECTION II—EXCLUSIONS

1. Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

a. which is expected or intended by the insured;

b. arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured.

This exclusion does not apply to:

(1) activities which are ordinarily incident to non-business pursuits; ***

d. arising out of any premises owned [*sic*] or rented to any insured which is not an insured location; ***."

In the "DEFINITIONS" section of the policy is the following:

"2. 'business' includes trade, profession or occupation.

4. 'insured location' means:

a. the residence premises [the Markogiannakis home in Chicago];

b. ***."

Defendants first contend that, even if the occurrence in Julia Crawley's apartment is excluded from coverage by one or more provisions of the policy, ICI should be estopped from raising these policy defenses, having breached its contractual duty to defend by not securing a declaratory judgment, as opposed to merely filing a declaratory suit, while the underlying tort action was still pending. They maintain that ICI was "strictly obliged" to obtain a "determination" of its liability under the policy either before or during the two-year pendency of the Crawley suit, rather than awaiting judgment in that case before filing its motion for summary judgment. For the following reasons, we find no merit in defendants' contentions.

In *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700, this court enunciated what remains the general rule:

"In Illinois, a liability insurer in doubt over whether it has a duty to defend its insured, cannot simply stand on the sidelines and wait until the tort action is completed before contesting the question of coverage. In a case where there is potential coverage so that the insurer has a duty to defend, but the in-

surer believes that it has a valid exclusionary defense, it must either (1) secure a declaratory judgment as to its rights and obligations before or pending trial of the original tort action or (2) defend the tort action under a reservation of rights. [Citations.] Where a duty to defend exists, but the insurer fails to take either course of action, its failure to defend is unjustified, and in a subsequent action by the insured against it, it is barred from disputing the questions of coverage. [Citations.] *** [T]he estoppel referred to is equitable in nature and arises from the doctrine that 'the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, *i.e.*, the 'Exclusions' provisions, when it has already breached the contract by violating the provisions inuring to the benefit of the insured, *i.e.*, the defense provisions.' " (*Reis*, 69 Ill. App. 3d at 782-83, quoting *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 197, 193 N.E.2d 123, 129.) *Reis* involved an insurer that refused to defend its insured and also failed to seek, at any time, a declaration that there was no coverage under the policy. This court held that Aetna was estopped from raising the issue of noncoverage in a subsequent declaratory suit by the insured because it had already breached the defense provisions of the policy. *Reis*, 69 Ill. App. 3d at 783.

■ While defendants would have us read the general rule as requiring an insurer to secure a final determination of its responsibilities under the policy, prior to judgment in the underlying lawsuit, in order to avoid the harsh result of estoppel, their reliance on the specific language used in *Reis* is misplaced. First, our research reveals that a long line of Illinois cases have almost uniformly expressed the general rule in terms of an insurer's obligation to "seek," to "file," or to "bring" a declaratory action, rather than to "secure" a declaratory judgment, prior to or pending resolution of the underlying lawsuit. (See, *e.g.*, *Murphy v. Urso* (1981), 88 Ill. 2d 444, 451, 430 N.E.2d 1079, 1082; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 479, 430 N.E.2d 1104, 1107; *Thornton v. Paul* (1978), 74 Ill. 2d 132, 156, 384 N.E.2d 335, 345; *Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.* (1988), 166 Ill. App. 3d 550, 556, 519 N.E.2d 1180, 1182; *Reliance Insurance Co. v. Martin* (1984), 126 Ill. App. 3d 94, 98, 467 N.E.2d 287, 290; *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 304, 461 N.E.2d 471, 473; *Sims v. Illinois National Casualty Co.* (1963), 43 Ill. App. 2d 184, 199, 193 N.E.2d 123, 130.) As the Illinois Supreme Court stated in *Clemmons*:

"The court will not enforce the insurer's protections under the policy where the insurer failed to act equitably, that is, failed to defend under a reservation of rights or to bring a declaratory judgment action to determine whether there was coverage under the policy." *Clemmons*, 88 Ill. 2d at 479.

A useful synopsis of the general rule was formulated by the Seventh Circuit Court of Appeals in a case interpreting Illinois insurance law:

"[T]hree options are available to a liability insurer requested to defend an insured against claims which the insurer believes exceed policy coverage. The insurer can (1) seek a declaratory judgment regarding its obligations before or pending trial of the underlying action; (2) defend the insured under a reservation of rights, or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend. Once an insurer violates its duty to defend, it is estopped to deny policy coverage in a subsequent lawsuit by the insured or the insured's assignee." (*Maneikis v. St. Paul Insurance Co.* (7th Cir. 1981), 655 F.2d 818, 821.)

In the usual case, an insurer may also elect to concurrently seek a declaratory judgment and defend under a reservation of rights. *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 304, 461 N.E.2d 471, 473; *Country Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 73, 239 N.E.2d 498, 505.

■■■ In the case at bar, ICI brought a declaratory action to determine coverage under the policy within one month of its refusal to defend its insured, thereby exercising one of its appropriate options under Illinois law. Furthermore, under a narrow exception to the general rule carved out by our supreme court in *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335, ICI would not be estopped from raising its exclusionary defenses in a subsequent suit on the policy even if it had not brought this declaratory action. The complaint filed by Julia Crawley contained allegations of both negligent conduct (not excluded from coverage by the "expected or intended by the insured" provision) and willful and/or intentional conduct (excluded from coverage by that provision). In this type of situation, where some theories of recovery are covered by the policy and others not, a conflict of interest would necessarily arise between insurer and insured if the insurer conducted or controlled the insured's defense in the personal injury suit. It would be to the insured's advantage to be found liable for the plaintiff's injuries based on negligent conduct, which would place re-

sponsibility for his financial loss upon the insurer under the terms of the policy. It would be to the insurer's advantage, however, for liability to be based on intentional acts, thereby relieving it of any duty to pay the judgment. Although the insurer's duty to provide a defense is established by the allegations in the complaint, serious ethical problems would arise if it actually conducted the defense where a conflict existed. Therefore, in such a case, the insured is entitled to representation by counsel of his own choosing. (*Thornton*, 74 Ill. 2d at 152; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 198-99, 355 N.E.2d 24, 31.) The insurer is neither obligated nor permitted to participate in the defense itself and may decline to do so without making a declaration of rights or seeking a declaratory judgment on coverage. (*Thornton*, 74 Ill. 2d at 152; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 475, 430 N.E.2d 1104, 1107.) However, its obligation to provide a defense will be satisfied by reimbursing the insured for the costs of the defense. (*Thornton*, 74 Ill. 2d at 152.) The *Thornton* exception to the general rule applies to ICI under the facts of this case.

The court also noted in *Thornton* that a declaratory judgment on the issue of whether the insured's actions were negligent or intentional, prior to the resolution of the underlying lawsuit, would decide in a "purely ancillary proceeding" an issue crucial to the insured's liability and also one on which punitive damages could be assessed. (*Thornton*, 74 Ill. 2d at 159.) Such prior determination of an ultimate fact or crucial issue upon which the insured's liability is predicated is premature. (*Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 197, 355 N.E.2d 24, 30.) Likewise, in the instant case, the issue of noncoverage based on Markogiannakis' allegedly intentional conduct could not have been decided by the trial court in this declaratory action prior to the resolution of the underlying lawsuit. Nonetheless, Markogiannakis maintains that because ICI failed during the course of that litigation to secure a declaration of its rights in relation to the "business pursuits" and "premises" exclusions, which were not crucial issues determinative of his liability for Crawley's injuries, it breached its duty to defend and is now liable for the full amount of the judgment against him. ICI posits that it followed the more logical course in moving for summary judgment only after a final determination of liability in the personal injury suit. The trial court, finding that ICI had acted properly by filing for declaratory relief, also observed that either party *could* have presented the issues for resolution at any time after the declaratory suit was brought. Their resolution at this juncture should not "be used as a device to estop the insurance com-

pany from protecting itself pursuant to the terms and conditions of the policy." We agree. Moreover, it is irrelevant, in the context of this appeal, whether or not the trial court *could* have properly decided one or both of these issues prior to the resolution of the underlying action. This type of inquiry (see, *e.g., Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.* (1983), 122 Ill. App. 3d 301, 306-08, 461 N.E.2d 471, 475-76), need not be conducted, as .no prior determination of issues was made. Finding no fault in ICI's actions, we conclude that ICI has not breached its duty to defend its insured. Consequently, it will not be estopped from raising its exclusionary defenses to coverage under the policy.

Having decided the issue of estoppel in favor of ICI, we next address the two exclusionary provisions which were found to preclude coverage under the policy. The trial court found that ICI had no duty to indemnify Markogiannakis for the judgment against him in the Crawley lawsuit, or to reimburse him for his defense costs, because Crawley's injuries arose "out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured" and also arose "out of any premises owned or rented to any insured which is not an insured location." We will examine each of these provisions in turn. Initially, however, we state the general rules of law applicable to our analysis of ICI's obligations under the policy.

■ It is the long-standing and well-settled rule in Illinois that the duty to defend and the duty to indemnify are not coextensive, the obligation to defend being broader than the obligation to pay. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 514 N.E.2d 150; *Murphy v. Urso* (1981), 88 Ill. 2d 444, 430 N.E.2d 1079; *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 522 N.E.2d 758; *McFadyen v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 209 N.E.2d 833.) The duty to indemnify arises only when the insured becomes legally obligated for a judgment in the underlying action, whereas the duty to defend an action against an insured is determined solely by reference to the allegations of the complaint. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163.) Thus, where the duty to defend has been established, "the insurer must defend an action even though it *may not* ultimately be obligated to indemnify the insured." (Emphasis in original.) *Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163.

■ The general rules relating to the interpretation of insurance policy exclusions are also well established. Ambiguous provisions or

equivocal expressions whereby an insurer seeks to limit its liability will be construed most strongly against the insurer and liberally in favor of the insured. The test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean, and the ambiguity will be resolved against the insurer. (*Bishop v. Crowther* (1981), 101 Ill. App. 3d 933, 940-41, 428 N.E.2d 1021, 1026.) However, if the provisions of the policy are clear and unambiguous there is no need for construction and the provisions will be applied as written. A term may be unambiguous because it has acquired an established legal meaning. Furthermore, all the provisions of the contract, rather than an isolated part, should be read together to interpret it and to determine whether an ambiguity exists. Finally, in applying the rules of interpretation, the words of the policy should be given their plain and ordinary meaning and the court should not search for an ambiguity where there is none. *United States Fire Insurance Co. v. Schnackenberg* (1981), 88 Ill. 2d 1, 4-5, 429 N.E.2d 1203, 1205.

With these principles in mind, we turn to the two exclusionary provisions at issue. If either provision applies, coverage is excluded under the policy and ICI has no obligation to pay Markogiannakis for the judgment against him. The first provision applies to injury or property damage "arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured." There is sufficient evidence in the record to establish that the insured went to Julia Crawley's building for the sole purpose of collecting rent from a tenant to whom he had leased his condominium unit for approximately three years; that immediately upon leaving the apartment, he was approached by Crawley, an officer of the condominium association, with whom he discussed his past-due condominium association fees; and that these fees were assessed solely in conjunction with his ownership of the rented unit. During the discussion in Crawley's apartment, Markogiannakis disputed Crawley's request for money or fees, and Crawley was caused to fall and was injured as a proximate result of his negligent conduct. For reasons that follow, we hold that the trial court did not err in concluding that Markogiannakis was engaged in a "business pursuit" at the time of this occurrence, that Crawley's injuries arose "out of business pursuits of any insured or the rental or holding for rental" of a premises by an insured, and that the exception for "activities which are ordinarily incident to non-business pursuits" did not apply.

A business pursuit is a continuous or regular activity, done for the purpose of earning a profit. (*State Farm Fire & Casualty Co. v.*

*Moore* (1981), 103 Ill. App. 3d 250, 252, 430 N.E.2d 641, 643; *Auto-Owners Insurance Co. v. Corrie* (1981), 102 Ill. App. 3d 93, 95, 429 N.E.2d 883, 885; Annot., 48 A.L.R.3d 1096, 1099 (1973).) This includes even part-time or supplemental income activities. (*Moore*, 103 Ill. App. 3d at 252 (paid baby-sitting in one's home on regular, continuous basis); *T.R. Krings v. Safeco Insurance Co.* (1981), 6 Kan. App. 2d 391, 394-95, 628 P.2d 1071, 1075 (compensated service on bank board of directors).) Under this definition, recognized in the majority of jurisdictions, including Illinois, Markogiannakis engaged in a business pursuit by renting an investment property over a continuous three-year period for the purpose of obtaining profit.

Moreover, the "Definitions" section of ICI's homeowner's policy expressly states that " 'business' *includes* trade, profession, or occupation." (Emphasis added.) While the identical language has not been analyzed in Illinois appellate decisions for the purpose of determining coverage, cases from other jurisdictions support an expansive reading to encompass pursuits other than what are normally understood to be trades, professions, or occupations. For example, in *Gaynor v. Williams* (Fla. App. 1979), 366 So. 2d 1243, the court was asked to decide whether a homeowner's policy with the same definition of "business" excluded coverage for an accident arising out of the insured's ownership of an apartment complex from which he derived all the profits, although his primary occupations were banking and insurance. Concluding that the "business pursuits" exclusion was applicable, the court stated:

> "[I]t does not matter that the ownership of the apartment house was not Gaynor's only or main occupation. *** Since the word 'includes' is a term of expansion, *** the definition here must be read to mean that business includes, but *is not limited to* the 'trade, profession or occupation' of the insured. Both the 'common understanding of the term' *** and the decided cases show that Gaynor's 'business pursuits' included the activity involved here." (Emphasis in original.) *Gaynor*, 366 So. 2d at 1243-44.

Finally, the interpretive rules require us to view the "business pursuits" exclusion in its entirety and in the context of the policy as a whole. We note that there are several other policy provisions, relating to real and personal property losses and additional benefits coverage, which contain "business pursuits" exclusions, indicating that the policy was intended to cover the insured in his capacity as a homeowner, not in any business capacity. Furthermore, the very activity at issue here, the "rental *** of any premises" by the insured, is excluded

with specificity within the same provision excluding "business pursuits." In light of the foregoing, we conclude that Stellios Markogiannakis was generally engaged in a "business pursuit," as defined by the policy, at the time of Julia Crawley's injuries.

■ Defendants maintain, however, that the negligent conduct which caused Crawley's injuries, *i.e.*, striking her or causing a door to strike her, was not directly related to any business pursuit of the insured and therefore falls within the exception for "activities which are ordinarily incident to nonbusiness pursuits." An insured reading the "business pursuits" exclusion and this exception would reasonably assume that it was the nature of the activity which was controlling (*Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 787, 387 N.E.2d 700, 708), and Illinois courts have interpreted policy coverage under like provisions by looking to the nature of the activity which proximately caused the injury. As the court observed in *Aetna Insurance Co. v. Janson* (1978), 60 Ill. App. 3d 957, 960, 377 N.E.2d 296, 299, even where an insured is generally engaged in a "business pursuit," a policy exclusion of "business pursuits *** other than activities therein which are ordinarily incident to nonbusiness pursuits" has been viewed as unclear, requiring an investigation of the particular act or omission complained of in order to determine whether such were "ordinarily incident to non-business pursuits." As a rule, the policy will cover acts which by their nature are not associated with the insured's business pursuits, but which are casually related to the business activities. (*State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 254, 430 N.E.2d 641, 645.) For example, courts have held certain acts of an insured, even when occurring on business premises or during business hours, to be "ordinarily incident to non-business pursuits," and therefore covered by the policy. See, *e.g.*, *State Farm Fire & Casualty Co. v. MacDonald* (1967), 87 Ill. App. 2d 15, 230 N.E.2d 513 (impulsive horseplay by repairman causing injury to other workman's head was "ordinarily incident to non-business pursuits" and covered under policy); *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700 (giving sleeping pills to an intoxicated employee on business premises was covered under policy); *Economy Fire & Casualty Co. v. Second National Bank* (1980), 91 Ill. App. 3d 406, 414 N.E.2d 765 (attorney throwing lit match into an office wastebasket was not within "business pursuits" exclusion where there was no direct evidence of factual context and it was not determinable whether match was lit for purpose of smoking own pipe, lighting client's pipe, or burning business records); *State Farm Fire & Casualty Co. v. Moore* (1981), 103 Ill. App. 3d 250, 430

N.E.2d 641 (despite "business pursuit" of mother providing licensed baby-sitting services in home, minor pulling a pan of boiling water off stove was injured as a result of an activity "ordinarily incident to non-business pursuits" where insured would have prepared the same lunch, including hot water for tea, for herself and her own children if injured child had not been present).

However, where the activity in question was a business dispute between partners, co-workers, or persons with an interest in the business enterprise, courts have generally held that the exception for activities "ordinarily incident to non-business pursuits" did not apply, excluding the occurrence from policy coverage. In *Bruns v. Foremost Insurance Co.* (1975), 27 Ill. App. 3d 50, 325 N.E.2d 815, the insured injured his business partner in an altercation over a business matter. The controlling fact was the business nature of the dispute, not that it had occurred after business hours. Distinguishing the horseplay in *State Farm v. MacDonald*, the court stated:

> "It is more reasonable to characterize an altercation between business partners over business matters as a 'business pursuit' than to so characterize the impulsive swinging of [a] mallet \*\*\*." (*Bruns*, 27 Ill. App. 3d at 53.)

Courts in other jurisdictions have arrived at the same result. For example, in *Reliance Insurance Co. v. Fisher* (1974), 164 Mont. 278, 284, 285, 521 P.2d 193, 197, a school teacher, also a farmer, struck another teacher during a dispute over disciplining a student during school hours. The Montana Supreme Court held that the incident which gave rise to the plaintiff's action against the insured came within the "business pursuits" exclusion of the insured's farmowner's policy, as the altercation was "clearly connected with and related to school activities" and therefore not an activity ordinarily incident to nonbusiness pursuits. Under facts similar to those of the instant case, a Florida appellate court held that the insured's son-in-law, who assisted her in the upkeep of an apartment building which she owned, and who injured a tenant in a dispute over return of a key and security deposit, was acting in furtherance of her business interests at the time of the incident. Therefore, the injuries "primarily arose out of a business pursuit and coverage under the policy was excluded." *Otera v. United States Fire Insurance Co.* (Fla. App. 1975), 314 So. 2d 208, 209.

Looking to the nature of the activity engaged in by Markogiannakis at the time of Crawley's injuries, we note that the insured was involved in a heated dispute, related to his business pursuit, with a person who had an interest in one aspect of his control and manage-

ment of that business pursuit. As the trial court observed, the pursuit of a business enterprise includes control of expenses incident to the profit-making activity. In this case, control of expenses and profits necessarily included payment of association dues required of all condominium owners. This activity was one that the insured would not have performed but for, and which was directly referable to, the rental operation in question. It is well established that the granting or denial of declaratory relief is a matter for the sound discretion of the trial court, whose determination absent abuse will not be disturbed on appeal. (*Aetna Insurance Co. v. Janson* (1978), 60 Ill. App. 3d 957, 961, 377 N.E.2d 296, 299.) Having reviewed the evidence establishing the nature of the activity in question as a business dispute, and the case law supporting the trial court's determination, we cannot say that the court abused its discretion in holding that the "business pursuits" exclusion was applicable to the occurrence at issue in this case, that the exception to that exclusion did not apply, and that, consequently, ICI had no duty to indemnify its insured for the judgment against him in the underlying lawsuit.

▇▇ The trial court also found that another policy provision, excluding personal liability and medical payments coverage for bodily injury "arising out of any premises owned or rented to any insured which is not an insured location," applied to the occurrence in Crawley's apartment and operated to preclude coverage. However, our review of the policy and the applicable case law leads us to the opposite conclusion. In *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 387 N.E.2d 700, this court stated the general rule as follows:

> "[A] homeowner's liability policy, in the absence of an express provision to the contrary, is not a policy providing limited coverage only applicable on the designated premises; rather it is designed to be a broad type of coverage protecting the insured nearly everywhere. Where, as here, the homeowner's policy 'agreed to pay *** all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence' and contains no other provision describing what coverage is provided, the insurer is liable for any accident for which the insured may be legally liable unless coverage is expressly excluded." (*Reis*, 69 Ill. App. 3d at 785-86.)

While the coverages listed in "Section I" of the ICI policy relate to real and personal property losses on or in reference to the residence premises of the insured, the liability coverages of "Section II" repre-

sent precisely the broad type of insurance "protecting the insured nearly everywhere," which was described in *Reis*. Moreover, the express terms chosen by ICI in drafting the Coverage E and F provisions underscore the insurer's intent to cover medical payments to others for bodily injury "caused by the activities of any insured *** off the insured location," as long as none of the expressly enumerated provisions apply.

Thus, whether coverage is excluded on the basis of where the incident took place depends on the interpretation of the provision excluding bodily injury "arising out of any premises owned or rented to any insured which is not an insured location." Beginning with *Reis*, Illinois appellate decisions interpreting nearly identical exclusionary provisions support the defendants' contention that this provision does not apply to the occurrence in Julia Crawley's apartment. The insurer in *Reis* argued that because the negligent acts took place on the business premises of the insured, and not at her residence, the designated premises for which her policy was issued, there was no coverage under the policy, despite the inapplicability of the "business pursuits" exclusion. The court held that the "premises" exclusion applied only "to injuries arising out of the premises themselves, presumably such accidents as falling glass," and was, therefore "clearly inapplicable" to the acts in question, which included offering medication to an intoxicated employee and ordering him to drive home in an intoxicated state. (*Reis*, 69 Ill. App. 3d 777, 788.) The Appellate Court, Fourth District, arrived at the same conclusion in determining that a match tossed into a wastebasket at the insured's leased office was not an occurrence caused by a defect arising out of "[any] premises[,] other than [an] insured premises, *** owned, rented or controlled by [any] insured," and was therefore not excluded from coverage under his homeowner's policy. (*Economy Fire & Casualty Co. v. Second National Bank* (1980), 91 Ill. App. 3d 406, 409, 414 N.E.2d 765, 767-68.) Similarly, in *Economy Fire & Casualty Co. v. Green* (1985), 139 Ill. App. 3d 147, 153, 487 N.E.2d 100, 104, this court followed the reasoning of *Reis* and *Second National Bank*, holding that a negligent act of the insured which did not arise out of any defects of premises owned, rented or controlled by the insured was not excluded from coverage by this type of provision. While one fifth district case did find that a premises exclusion applied where a motorist struck a mower attachment used by a farmer mowing along the edge of leased farmland, it was unclear whether the court considered this a defect of the land itself. (*State Farm Fire & Casualty Co. v. Stinnett* (1979), 71 Ill. App. 3d 217, 220, 389 N.E.2d 668, 670.) In any event, none of

the above cases, including *Stinnett,* lend support to ICI's argument that Markogiannakis' negligent conduct in the Crawley apartment falls within the premises exclusion. Not only did Crawley's injuries not arise from any defect of a premises owned [by] or rented to the insured (*e.g.,* Mason's apartment); they did not even occur within or directly adjacent to such a premises. Therefore, we find that the provision excluding coverage for bodily injury "arising out of any premises owned or rented to any insured which is not an insured location" did not apply.

The issue of indemnification having been decided in favor of ICI on the basis of the "business pursuits" exclusion, there remains the question of whether the insurer has a duty to pay Markogiannakis' defense costs. Under the rule of *Thornton v. Paul,* in a conflict of interest situation, an insurer's obligation to defend, if one exists, should be satisfied by reimbursing the insured for the costs of his defense. We decide this question in favor of the insured. Our reasons follow.

■■■ In Illinois, the existence of a duty to defend is determined by comparing the allegations of the complaint and the terms of the policy; if the complaint contains allegations which bring the claims actually, or even potentially, within the coverage of the policy, the insurer is obligated to defend. (*Zurich Insurance Co. v. Raymark Industries, Inc.* (1987), 118 Ill. 2d 23, 52, 514 N.E.2d 150, 163; *Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 476, 430 N.E.2d 1104, 1107; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 193, 355 N.E.2d 24, 28.) An insurer may justifiably refuse to defend only where it is apparent from such a comparison that the allegations fail to state any claim within, or potentially within, the scope of policy coverage. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 367, 522 N.E.2d 758, 762; *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, 933.) Stated another way, unless the complaint on its face clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. (*Tuell v. State Farm Fire & Casualty Co.* (1985), 132 Ill. App. 3d 449, 452, 477 N.E.2d 70, 73.) The threshold that the complaint must satisfy to present a claim of potential coverage is low. Where there is doubt as to coverage, it is to be resolved in favor of the insured. (*Management Support Associates v. Union Indemnity Insurance Co.* (1984), 129 Ill. App. 3d 1089, 1096, 473 N.E.2d 405, 411.) Of course, if the complaint contains allegations which, if true, would exclude coverage under the policy, the insurer has no duty to defend. (*Associated Indemnity Co. v. Insurance Co. of*

*North America* (1979), 68 Ill. App. 3d 807, 816, 386 N.E.2d 529, 537.) However, if an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt at the time the insurer is requested to defend, because any doubts as to coverage will be resolved in the insured's favor. (*International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.* (1988), 168 Ill. App. 3d 361, 367, 522 N.E.2d 758, 762.) Moreover, the insurer's duty to defend is not diminished by its knowledge of extraneous facts which indicate or even demonstrate that the claim alleged in the complaint is, in fact, not covered. (*Associated Indemnity Co. v. Insurance Co. of North America* (1979), 68 Ill. App. 3d 807, 816, 386 N.E.2d 529, 536.) As this court has stated:

> "The fact that the insurer is possessed of information, whether obtained from its insured or from other sources, which may show the claim against the insured *** [is] outside the coverage of the policy is, in this regard, of no consequence." (*Associated Indemnity*, 68 Ill. App. 3d at 816.)

However, notwithstanding this broad duty to defend, an insurer may establish proof after the resolution of the personal injury action that the insured's conduct is not covered under the policy and, therefore, the insurance company has no duty to pay the judgment against the insured. *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 862, 531 N.E.2d 913, 916.

 In accord with these principles of law, we must look to Julia Crawley's complaint in the underlying personal injury action to determine whether her claim was potentially covered by the insured's homeowner's policy at the time ICI was requested to tender a defense. If the allegations of the complaint indicated potential coverage, and no allegation clearly indicated noncoverage, ICI had a duty to defend which must be satisfied by reimbursing the insured for his costs in defending the Crawley lawsuit. Count I of the Crawley complaint alleged negligent conduct potentially covered under the policy. As we have observed, nowhere in the complaint is there an allegation or even a suggestion that Markogiannakis' conduct took place in a business context or that the encounter between the two parties was in any way related to a business or rental activity of the insured. While it is clear from the statements in ICI's denial letter that it had knowledge, from another source, of the business context of the altercation, this knowledge is of no consequence in determining whether a duty to defend existed based on the allegations of the complaint. Furthermore, even if Markogiannakis' purpose in going to Crawley's building in order to collect rent and/or Crawley's inquiries about the condomin-

ium association fees had been stated or indicated on the face of the complaint, the well-recognized ambiguity of the "ordinarily incident to non-business pursuits" clause in homeowner's policies would have had to be considered in determining whether it was clearly apparent that her personal injury claim was beyond policy coverage. Because of the necessity for a judicial construction of this clause, in this and similar cases, the applicability of the "business pursuits" exclusion would not have been clear and free from doubt at the time ICI was requested to defend the case. Finally, while the location of the incident is clear from the statement of Crawley's address and from her description of events inside her apartment, noncoverage would be clearly apparent from these allegations only if the "premises" exclusion had applied to the occurrence.

For the above-stated reasons, we conclude that Julia Crawley's complaint set forth allegations bringing her claim potentially within the coverage of the policy, and thus established ICI's duty to defend its insured. According to the rule of *Thornton v. Paul*, this obligation must be satisfied by reimbursing the insured for his defense costs in the underlying action.

We also recognize that in a case relied upon by ICI, this court recently held that the trial court in a declaratory action did not err in considering factual matters outside the complaint in determining an insurer's duty to defend where each party submitted factual documents in support of cross-motions for summary judgment, thereby waiving any objection to the consideration of matters outside the complaint, and where these materials shed light on the parties' knowledge and intent at the time a defense request was tendered. (*Charles H. Eichelkraut & Sons, Inc. v. Bituminous Casualty Corp.* (1988), 166 Ill. App. 3d 550, 556-57, 519 N.E.2d 1180, 1184-85.) However, the court in *Eichelkraut* also determined that, even limiting their consideration to the face of the complaint, "the factual allegations were sufficient to lead [the insurer] to conclude that it owed no duty to defend [the insured]." (*Eichelkraut*, 166 Ill. App. 3d at 557.) Significantly, the court further stated:

> "Notwithstanding our holding in this case, we note that in general the question of whether a claim against an insured is potentially covered is so close in so many cases that the benefit of the doubt goes to the insured." (*Eichelkraut*, 166 Ill. App. 3d at 557.)

In the instant case, both the allegations themselves and the nature of the occurrence at issue point to the conclusion that there was at least potential coverage based on the allegations in Crawley's com-

plaint. We therefore see no reason why the long-standing general rule regarding an insured's duty to defend, and the rule of *Thornton v. Paul* requiring reimbursement of defense costs, should not apply.

Accordingly, the decision of the trial court, granting summary judgment to the plaintiff and finding that it had no duty to defend, indemnify, or reimburse Stellios Markogiannakis for the costs of his defense is affirmed in part, reversed in part, and remanded with directions. We affirm the finding of the trial court that Julia Crawley's injury came within the policy exclusion relating to injuries "arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured." Solely on this basis, ICI has no duty to indemnify its insured for the judgment against him in the underlying tort action. However, ICI has the obligation to reimburse Markogiannakis for the costs of his defense in that lawsuit. This case is remanded to the trial court for a determination of those costs, including attorney fees, and for any further proceedings not inconsistent with this opinion.

Affirmed in part; reversed in part and remanded, with directions.

MURRAY, P.J., and PINCHAM, J., concur.